Joseph **ROBERSON** d/b/a Roberson Orchards; James R. Roberson d/b/a Roberson Orchards, Plaintiffs,

v.

**E.I. DUPONT DE NEMOURS & CO., Defendant.**

Civ. No. 93–3092.

United States District Court, W.D. Arkansas, Harrison Division.

Sept. 26, 1994.

J. Bruce McMath, McMath Law Firm, W. Evans Benton, Little Rock, AR, for plaintiffs.

W. Michael Adams, J. David Garrett, James C. McMichael, Jr., Shreveport, LA, James M. Moody, Wright, Lindsey & Jennings, Little Rock, AR, for defendant.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

Joseph and James R. Roberson d/b/a Roberson Orchards, plaintiffs in this case, have filed state law claims for negligence, strict liability and breach of warranty against defendant E.I. DuPont. These causes of action concern Dupont's fungicide products marketed under the brand name of Benlate 50 DF.

DuPont filed a motion for partial summary judgment seeking dismissal of plaintiffs' state law claims to the extent that these claims are premised upon a showing of inadequate labeling or packaging. DuPont argues that such claims are expressly preempted by the Federal Insecticide, Fungicide and Rodenticide Act (FIFRA), 7 U.S.C.A. §§ 136–136y (1980 and West Supp.1994).

## I. FACTUAL BACKGROUND

In 1986, DuPont began to manufacture and distribute Benlate as a fungicide. On September 1, 1989, the EPA placed a stop order on the sale, use and removal of Benlate, because it was claimed that "EPA has reason to believe that you have been selling this pesticide in an adulterated condition which constitutes an unlawful act under section 12(a)(1)(e) of FIFRA, 7 U.S.C.A. § 136j(a)(1)(e)." (Pls.' Resp.Def.'s Mot.Part. Summ.J., Ex. 684). According to the EPA, "[a]nalytical results showed numerous batches of Benlate and Tersan to be significantly contaminated with atrazine," an herbicide. The Robersons claim that this herbicide contamination did great harm to their peach orchards.

According to the Robersons' summary judgment materials, the atrazine contamination occurred in 1988 and 1989 when the Benlate was being manufactured by a Du-Pont contract manufacturer, Terra International, Inc. It appears that prior to producing Benlate, Terra had produced a herbicide called Prozine which is composed of Atrazine and Prowl. Terra attempted to clean out the traces of Atrazine and Prowl from its plant equipment by flushing it with starch and sugar. The contaminated starch and sugar was then used during Benlate production as inert matter. The starch and sugar were used at measured rates so as to achieve contamination levels no greater than 20 parts per million. It appears that DuPont was aware of this process.

According to the Robersons' summary judgment materials, the Benlate label contained an error in the proper application rate which resulted in rates of application at three times the intended intensity. Second, the Robersons have offered materials showing that there were defects in Benlate's packaging process that led to leaks and exposure of Benlate to warm, humid air which in turn led to the increased formation of phytotoxic compounds harmful to crops. All of the above allegedly caused great damage to the Robersons' peach orchards.

There are also materials before the court tending to show that DuPont specifically knew some of the above facts when it registered its product with the EPA, and it learned about others thereafter; that Du-Pont never reported these facts to the EPA; and that DuPont failed to notify the EPA and other parties of the growing evidence that the defects in its product were having negative effects on crops.

## II.  FIFRA REGULATORY SCHEME

Because it will be relevant to the court's discussion, a very brief explanation of the regulatory scheme created by FIFRA is in order. Under FIFRA, no pesticide may be sold in the United States unless registered with the EPA. A manufacturer wishing to market its product must first petition the EPA for registration. 7 U.S.C.A. § 136a. The applicants for registration are responsible for submitting certain performance data and draft product labels. The required elements of these draft labels are set forth in great detail. See 40 C.F.R. §§ 158.100–158.740 (1993). As will be discussed in greater detail later, the EPA does not generally attempt to independently verify the test data provided. The pesticide manufacturer must include a copy of a proposed label as part of the registration petition. 7 U.S.C.A. § 136a(c)(1)(C) (1980 and West Supp.1984). If the label is not adequate or accurate, the pesticide is "misbranded," and the manufacturer is subject to various civil and criminal penalties, including revocation of registration. *Id.* § 136(q).

In contrast to the detailed statutory and regulatory regime concerning labeling and registration, the provisions for packaging are much less so. FIFRA provides only that

> (c) ... The Administrator, after notice and opportunity for hearing, is authorized—
>
> \*    \*    \*    \*    \*    \*
>
> (3) to establish standards ... with respect to the package, container, or wrapping in which a pesticide or device is enclosed for use or consumption, in order to protect children and adults from serious injury or illness resulting from accidental ingestion or contact with pesticides or devices regulated by [FIFRA] as well as to accomplish the other purposes of [FIFRA]

*Id.* § 136w(c)(3). To the best of the court's knowledge, the only EPA packaging regulation concerns child-resistant packaging. 40 C.F.R. § 152.152 (1993).

With this brief exposition of FIFRA's regulatory scheme, the court can now proceed to discuss the pre-emption issues presented by this case.

## III.  FIFRA PRE–EMPTION

FIFRA has an express pre-emption clause. In essence, FIFRA permits States to regulate the *sale* and *use* of pesticides more strictly than FIFRA does. However, States are prohibited from imposing any requirements on *labeling* or *packaging* of pesticides

"in addition to or different from" those required by FIFRA. The relevant pre-emption language is as follows.

§ 136v. Authority of States

(a) In general

A State may regulate the sale or use of any federally registered pesticide or device in the State, but only if and to the extent the regulation does not permit any sale or use prohibited by this subchapter.

(b) Uniformity

Such State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under [FIFRA].

7 U.S.C.A. § 136v.

## IV. NEGLIGENCE AND STRICT LIABILITY

■ This court has previously held that FIFRA expressly pre-empts state law failure to warn claims that are premised upon inadequate labeling, if the label is EPA-approved. *DerGazarian v. Dow Chem. Co.*, 836 F.Supp. 1429, 1447 (W.D.Ark.1993). Such failure to warn claims are expressly pre-empted by § 136v, because they are "requirements for labeling or packaging in addition to or different from those required by" FIFRA.

FIFRA apparently has an identical preemptive effect on state claims premised upon inadequate packaging, despite the meager federal regulation of packaging in comparison with labeling described above. Certainly, nothing in the text of § 136v indicates that court's should distinguish between FIFRA's pre-emptive effect on inadequate labeling claims and its pre-emptive effect on inadequate packaging claims, although it is troublesome to pre-empt state law causes of action in an almost entirely unregulated field.

Therefore, to the extent that the Robersons negligence and strict liability claims are premised upon inadequate failure to warn or inadequate packaging, they are pre-empted.

## V. ESTOPPEL

■ The Robersons have placed materials before the court tending to show that DuPont did not place before the EPA all the relevant available information on Benlate,

but instead intentionally concealed material facts. Specifically, the Robersons allege that DuPont was aware (1) that the ingredients of its product were not accurately stated on the label; (2) that its product was three times denser than labeled so that the application rate was in error; and (3) that the packaging leaked and was inadequate. If this is true, DuPont may be estopped from asserting preemption of packaging and labeling claims.

This holding is required to protect the integrity of the pesticide regulation process. The extent to which the FIFRA registration process depends on the integrity of the manufacturer has been discussed at length in *Burke v. Dow Chem. Co.*, 797 F.Supp. 1128 (E.D.N.Y.1992).

Despite [ ] efforts to rationalize and strengthen the statute, EPA still relies on manufacturers for information about the safety of their products. It does not conduct independent testing. Much of the information known to the manufacturer is withheld from the public. As two students of the field have noted,

the basic structure of FIFRA remains unchanged. The production of data to support a pesticide registration is controlled by the registrant, and this data may be withheld from the public as a trade secret.

*Id.* at 1134 (citations omitted). The court goes on to state that,

Unless alerted by the manufacturer to dangers or the need for special restrictions in the use of the product, it is unlikely that EPA will assume the burden of deciding whether a product should not be sold to the public or used in the home. While no [pesticide] may be sold in the United States unless registered with EPA, it is applicants for registration who are responsible for submitting performance data and draft product labels to EPA. The data that must be submitted depends on the nature of the pesticide and its intended use. EPA does not attempt to independently verify the test data provided, but does determine if the testing methodology

reportedly used is "acceptable" in light of generally accepted scientific standards.

*Id.* at 1135 (citations omitted).

In *Hurley v. Lederle Lab. Div. of Am. Cyanamid,* 863 F.2d 1173, 1179–80 (5th Cir. 1988), the court held that a manufacturer who withholds information under such a scheme no longer receives pre-emption protection. Although *Hurley* deals with the Federal Food, Drug and Cosmetic Act, 21 U.S.C.A. §§ 301–392 (1972 and West Supp. 1994), rather than FIFRA, it is an appropriate case to consider. First of all, as the *Hurley* court describes, the registration procedures under the two statutes are similar in that they both depend upon the integrity of the manufacturer.

In the area of approved warnings, although the FDA takes an active role in designing the warning, it remains a partially passive agency. That is, it accepts information given by manufacturers proposing the licensing of a particular vaccine, and determines the proper warning based upon the information provided.

*Id.* at 1179 (citations omitted). In addition, both statutes contain express pre-emption clauses. 21 U.S.C.A. § 343–1. (1972 and West Supp.1994).

Where there is evidence that a manufacturer has withheld material facts, the *Hurley* court decided to deal with the issue in the following manner.

We believe that this issue should be presented to the jury in the form of special interrogatories, questioning whether and what information the manufacturer withheld from the FDA, if any, and whether possession of this information would have materially altered the content of the FDA's warning.

*Id.*

In *Burke, supra,* the court never expressly addressed and decided whether pre-emption would be available to a manufacturer who withheld information from the EPA, but more than once the court voiced its concern that allowing pre-emption would "permit a manufacturer that was ... aware of dangers to refrain from informing EPA of needed changes in its product's label and then to hide behind the very label it knew to be inadequate." *Id.,* 797 F.Supp. at 1141.

This court shares the concerns voiced in *Burke* and *Hurley.* Therefore this court holds that DuPont may be estopped from asserting FIFRA pre-emption to the extent that it withheld material facts from the agency, either at the time of registration or thereafter. Whether or not the factual predicate for estoppel exists will be submitted to the jury if the evidence warrants.

It should be noted that, unlike the interrogatories recommended by the Fifth Circuit in *Hurley,* it will not be necessary for the jury to determine whether the information withheld would have led the EPA to materially alter the content of Benlate's warning, because (1) such a determination would be entirely outside the competence of this court or the jury; and (2) requiring such a difficult determination would present a serious hindrance to the critical goal of preventing the corruption of the pesticide registration process.

It cannot be said that this holding either undermines the exclusive federal control of pesticide labeling and packaging or frustrates the purposes of FIFRA pre-emption. If it turns out that material information was withheld from the EPA, then inadequate packaging or labeling claims based on those facts will not interfere with any EPA determination. Quite simply, the EPA will have never made any determination at all with regard to the facts withheld.

In fact, the court's holding today actually furthers federal control of pesticide labeling and packaging. It will aid the EPA in guarding the integrity of the registration process by giving pesticide manufacturers an incentive to place all relevant facts before the EPA, and to err on the side of over-inclusion, lest they lose the coveted benefits of FIFRA pre-emption. In this way, today's holding actually helps the EPA perform its role as the exclusive government body, federal or state, that regulates the labeling and packaging of pesticides.

## VI. BREACH OF EXPRESS AND IMPLIED WARRANTIES

■ An action for breach of express warranty that relies upon statements made on an

EPA-approved label is not pre-empted, even though FIFRA prohibits "any [state] requirements for labeling." *Ministry of Health v. Shiley*, 858 F.Supp. 1426 (C.D.Cal. 1994); *Jillson v. Vermont Log Buildings*, 857 F.Supp. 985 (D.Mass.1994).

This result is compelled by *Cipollone v. Liggett Group*, —— U.S. ——, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992). In *Cipollone*, a plaintiff brought an action for breach of express warranty based on cigarette advertising statements. Seven justices found these claims were not pre-empted. The plurality opinion explained that the express warranty claim based on advertising statements was not pre-empted, even though the statute in question expressly pre-empted state imposed-requirements on advertising. The simple reason was that "the 'requirements' imposed by an express warranty claim are not 'imposed under State law,' but rather imposed *by the warrantor.*" —— U.S. at ——, 112 S.Ct. at 2622. That is, the terms of the express warranties are not state-imposed requirements, but rather "contractual commitment[s] voluntarily undertaken." *Id.,* —— U.S. at ——, 112 S.Ct. at 2622.

The Fourth Circuit does not agree with this analysis of *Cipollone*. In *Worm v. American Cyanamid Co.*, 5 F.3d 744, 748–49 (4th Cir.1993), the court held that FIFRA pre-empts express warranty claims based on statements made on an EPA-approved label. The Fourth Circuit distinguished *Cipollone* on the grounds that advertising statements made by a cigarette manufacturer are voluntary, whereas labeling statements made by a pesticide manufacturer are required by FIFRA and approved by the EPA. Thus, labeling statements under FIFRA are not self-imposed in the way that the advertising statements were in *Cipollone.*

This court is unconvinced by the Fourth Circuit's reasoning. First of all, the critical point of *Cipollone* is that the terms of the warranty were not state-imposed. In *Cipollone*, the terms of the express warranty were self-imposed by the manufacturer in its advertising, and in this case they are imposed by the EPA on the product's labeling. In neither case are the terms of the warranty imposed by the state which would be the only

action prohibited by FIFRA pre-emption. Thus, this court concludes that the breach of express warranty claims should survive the summary judgment motion, even to the extent that they depend on statements made on the EPA-approved label. The court recognizes that this issue presents a close question and will revisit the issue if it should become necessary to do so upon the making of the proper post-judgment motions.

In any case, it is easy to overstate the mandatory nature of labeling statements mandated by FIFRA. FIFRA does require that certain *kinds* of statements be made on a pesticide label, but EPA does not dictate the detail of these labels or test their accuracy in any stringent fashion. Their content depends in great degree on the discretion of the manufacturer. By way of contrast, in *Cipollone*, a statute expressly mandated, word-by-word, the content of a warning label on smoking and health. That is a true example of a mandatorily-imposed labeling statement.

■ Turning now to implied warranty claims, these depend entirely on obligations imposed by state law. Thus, they are pre-empted to the extent that these implied warranties guarantee the adequacy of the pesticide's labeling or packaging. *Papas v. Upjohn*, 985 F.2d 516, 519–20 (11th Cir.1993); *contra Ministry of Health v. Shiley*, 858 F.Supp. 1426 (C.D.Cal.1994).

## VII. BREACH OF FIFRA DUTIES

In their response, the Robersons argue that Dupont violated various FIFRA duties unrelated to labeling and packaging. They further argue at length that FIFRA creates "standards of care that are independent bases for Plaintiffs' claims." Specifically, the Robersons argue that Dupont violated FIFRA when it sold a pesticide that differed in composition from the composition described to the EPA, 7 U.S.C. § 136j(a)(1)(C); sold a pesticide that was adulterated, *id.* § 136j(a)(1)(E); knowingly falsified reports or other records, *id.* § 136j(a)(2)(M); added a substance to their product that defeated the purposes of FIFRA, *id.* § 136j(a)(2)(O); falsified testing information, *id.* § 136j(a)(2)(Q); and failed to take reasonable

steps to inform persons possessing a pesticide of recall, *id.* § 136q(b)(4)(D). The Robersons add that "[a]ll of these duties, *and others not listed here,* exist independently of FIFRA's labeling and packaging requirements and are not pre-empted." (Pls.' Resp. Mot.Part.Summ.J. at 17) (emphasis added).

The Robersons are correct that state law may sometimes utilize federal law to establish standards of care. In Arkansas, for instance, the violation of a statute or regulation can constitute evidence of negligence, although it never constitutes negligence per se. *See e.g. Bussell v. Mo. Pac. R.R.,* 237 Ark. 812, 376 S.W.2d 545 (1964).

The Robersons argue that this court can utilize FIFRA provisions to create state law standards of care, because the courts of Arkansas would do so and because they are not pre-empted from doing so. The Robersons raised these issues in their response to Du-Pont's motion for summary judgment, but the court need not address them yet as Du-Pont never moved to dismiss these claims in its motion for summary judgment.[1]

## VIII. CONCLUSION

This court holds that (1) FIFRA pre-empts any negligence, strict liability or implied warranty claims premised upon failure to warn, inadequate labeling or inadequate packaging; (2) But DuPont may be estopped from asserting pre-emption if it withheld material information from the EPA about packaging or labeling.

IT IS SO ORDERED.

### *ORDER*

On this 23rd day of September, 1994, upon consideration of defendant's motion for partial summary judgment, the court finds for the reasons set forth in a memorandum opinion of even date that said motion should be and hereby is denied.

IT IS SO ORDERED.

1. If and when these issues come before the court, the parties may find it useful to consult the following sources: Restatement (Second) of

Torts § 286–88 (1965); 57A Am.Jur.2d *Negligence* §§ 743–752 (1989).