JOHN A. HOELCK, APPELLANT, V. ICI AMERICAS, INC., APPELLEE.

584 N.W. 2d 52

Filed September 15, 1998. No. A-96-1268.

Patrick M. Connealy and Laurice M. Margheim for appellant.

Thomas J. Culhane, of Erickson & Sederstrom, P.C., for appellee.

SIEVERS, MUES, and INBODY, Judges.

MUES, Judge.

## INTRODUCTION

Plaintiff, John A. Hoelck, a farm laborer, was allegedly injured when gases from bags which had contained an insecticide, Dyfonate 20-G, exploded and his clothing caught on fire. Hoelck filed a negligence and strict liability action against his employer and against the manufacturer of the insecticide, ICI Americas, Inc., now called ZENECA (hereafter ZENECA). The trial court granted ZENECA's first summary judgment motion, finding that the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA), 7 U.S.C. §§ 136 to 136y (1988), preempted the bulk of Hoelck's claim. A sole remaining allegation of negligence was dismissed on ZENECA's second motion for summary judgment. Hoelck appeals. The employer is not part of this appeal.

## BACKGROUND

According to Hoelck's operative petition, on June 16, 1989, Hoelck's employer instructed him to burn some empty paper and plastic bags in which Dyfonate 20-G, a granular insecticide manufactured by ZENECA, had been sold. The label on the bags informed users that the insecticide was considered non-combustible and that once the bags were emptied they could be

disposed of by burning. The label warned users to stay out of the smoke because toxic materials could be given off. Hoelck ignited several Dyfonate 20-G bags in a barrel, and as the bags started to burn, gases from the bags exploded, igniting his clothing and causing severe burns.

Hoelck filed a lawsuit against his employer and ZENECA. In paragraph VIII of his amended petition, Hoelck alleged that ZENECA was negligent as follows:

A. In misbranding by stating that Dyfonate 20-G is "considered noncombustible" when it is highly combustible under the conditions likely to occur during use by consumers.

B. In recommending that the empty bags be destroyed by burning when it knew, or should have known, that gases given off when Dyfonate 20-G is heated are highly combustible.

C. By failing to investigate and determine if Dyfonate 20-G bags could be safely burned as stated by [ZENECA] and as directed by [Hoelck's employer].

D. In marketing a combustible insecticide when other reasonable alternatives were available to it.

E. In packaging flammable chemicals in paper bags for sale to consumers.

F. By failing to warn [Hoelck] that the residue in Dyfonate 20-G bags might be dangerously combustible.

G. In failing to adequately warn of risks involved in burning Dyfonate 20-G bags.

In paragraph IX, Hoelck further alleged:

Dyfonate 20-G, as manufactured and packaged by [ZENECA] was defective and unreasonably dangerous to users or consumers because:

A. it is combustible material packaged in a flammable package;

B. of defective and misleading labeling and misbranding of the container;

C. [ZENECA] failed to warn of the danger inherent in burning any amount of Dyfonate 20-G.

ZENECA's answer alleged by way of defense that, inter alia, Hoelck's petition failed to state a cause of action because

Dyfonate 20G is a pesticide regulated by the United States Government under the terms of [FIFRA], which act sets forth the only labeling requirements applicable to Dyfonate 20G and preempts, by virtue of 7 U.S.C. § 136v, any state laws or actions brought under state law based upon allegations of improper labeling and/or a failure to warn users of risks associated with use of Dyfonate 20G.

Prior to trial, ZENECA filed a motion for partial summary judgment. The motion is not included in our records, but presumably ZENECA alleged that all but one of Hoelck's claims were preempted by FIFRA. The trial court granted ZENECA's motion for partial summary judgment, stating that all of Hoelck's allegations of both negligence and strict liability, except those stated in paragraph VIII(D) of his petition, were barred because they were preempted by FIFRA.

ZENECA subsequently filed a second motion for summary judgment on the remaining allegation. The trial court granted ZENECA's motion, finding that there were no genuine issues of material fact and that ZENECA was entitled to judgment as a matter of law. Hoelck timely appeals.

## ASSIGNMENTS OF ERROR

Hoelck alleges the trial court erred (1) in receiving and considering the affidavit of Andrew Davidson, a ZENECA employee; (2) in finding that FIFRA preempted Hoelck's claims; and (3) in granting ZENECA's second motion for summary judgment.

## STANDARD OF REVIEW

In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Marrs v. Keelan*, 254 Neb. 723, 578 N.W.2d 442 (1998); *Syracuse Rur. Fire Dist. v. Pletan*, 254 Neb. 393, 577 N.W.2d 527 (1998).

Summary judgment is proper when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of

law. *Marrs v. Keelan, supra*; *Houghton v. Big Red Keno*, 254 Neb. 81, 574 N.W.2d 494 (1998).

Regarding questions of law, an appellate court is obligated to reach conclusions independent of those reached by the trial court. *First Nat. Bank v. Daggett*, 242 Neb. 734, 497 N.W.2d 358 (1993).

### FIRST MOTION FOR SUMMARY JUDGMENT
*FIFRA Generally.*

The evidence is clear that Dyfonate 20-G is a pesticide. Congress originally adopted FIFRA in 1947 as a pesticide labeling statute. *Wright v. Dow Chemical U.S.A.*, 845 F. Supp. 503 (M.D. Tenn. 1993). Under FIFRA, no pesticide may be sold or distributed unless it has been registered with the Environmental Protection Agency (EPA). 7 U.S.C. § 136a(a).

Since its initial passage in 1947, FIFRA has undergone several significant transformations, each reflecting dissatisfaction with existing mechanisms for limiting potential health risks posed by chemical pesticides. *See Burke v. Dow Chemical*, 797 F.Supp. 1128 (E.D.N.Y.1992). In its current form, FIFRA requires that EPA rely on manufacturers for information about the safety of their products. 7 U.S.C. § 136a(c). However, much of the information known to the manufacturer is withheld from the public; indeed, "[t]he production of data to support a pesticide registration is controlled by the registrant, and this data may be withheld from public scrutiny as a trade secret." *Burke*, 797 F.Supp. at 1134 (*quoting* Tybe A. Brett & Jane E.R. Potter, *Risks to Human Health Associated with Exposure to Pesticides at the Time of Application and the Role of the Courts*, 1 Vill.Envtl.L.J. 355, 363 (1990)).

Unless alerted by the manufacturer to dangers or the need for special restrictions in the use of the product, it is unlikely that EPA will assume the burden of deciding whether a product should not be sold to the public. *Id.* at 1135. Although no insecticide may be sold in the United States unless registered with EPA, it is the applicants for registration who are responsible for submitting performance data and draft product labels to EPA. 7 U.S.C.

§ 136a([c]). The degree of specificity that must be submitted depends on the nature of the pesticide and its intended use. *See* 40 C.F.R. § 158.100-158.740.

*Higgins v. Monsanto Co.*, 862 F. Supp. 751, 755 (N.D.N.Y. 1994).

> Although FIFRA does provide for individuals with standing to petition EPA to cancel or suspend registrations and also to seek judicial review of EPA decisions under 7 U.S.C. § 136n(a), because consumers will not ordinarily bring such petitions absent a catastrophe or voluntary action by the manufacturer, EPA oversight will not be nearly as protective of persons exposed to pesticides as state tort law.

862 F. Supp. at 756.

*FIFRA Preemption.*

"In deciding whether federal law preempts state law, courts must 'start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that is the clear and manifest purpose of Congress.'" *Wright v. Dow Chemical U.S.A.*, 845 F. Supp. at 508 (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 67 S. Ct. 1146, 91 L. Ed. 1447 (1947)). "When Congress provides a preemption clause, the presumption against preemption mandates courts to read such a clause narrowly." *Id.*

In pertinent part, 7 U.S.C. § 136v, the preemptive provision of FIFRA, provides:

> **(a) In general**
> A State may regulate the sale or use of any federally registered pesticide or device in the State, but only if and to the extent the regulation does not permit any sale or use prohibited by [FIFRA].
> **(b) Uniformity**
> Such State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under [FIFRA].

In *Ackles v. Luttrell*, 252 Neb. 273, 561 N.W.2d 573 (1997), a case decided after the district court decision here, the Nebraska Supreme Court had the opportunity to address the

preemptive effect of § 136v. In that case, the plaintiff was delivering the mail when he was exposed to an insecticide which was being sprayed by a crop duster on an adjacent cornfield. Upon being exposed, the plaintiff experienced nausea, shaking, diarrhea, and vomiting. The plaintiff subsequently experienced other physical ailments and was declared disabled from his job as a postal carrier.

The plaintiff sued the manufacturer of the pesticide, the defendant, alleging, inter alia, that the defendant had failed to warn or convey appropriate information regarding the insecticide to persons who were applying the insecticide. It was undisputed that the label involved had been approved by the EPA. The trial court determined that the plaintiff's claims were preempted by § 136v(b) and granted the defendant's motion for summary judgment. On appeal, the plaintiff argued that his claim should not be preempted, because § 136v(b) did not explicitly state that FIFRA preempts common-law causes of action concerning pesticide labeling. The Nebraska Supreme Court disagreed, stating:

> If [the plaintiff's] labeling-based cause of action against [the defendant] were allowed to proceed and be successful, [the defendant] would be stuck between the proverbial rock and hard place in that it would be required to use the label approved by the EPA, yet pay damages because a jury determined that such label was insufficient. This result would obviously run contrary to the intentions of Congress in passing FIFRA, namely, that labeling information will be regulated solely by the federal government.

*Ackles v. Luttrell*, 252 Neb. at 283, 561 N.W.2d at 579. See, also, *Welchert v. American Cyanamid, Inc.*, 59 F.3d 69 (8th Cir. 1995); *Worm v. American Cyanamid Co.*, 5 F.3d 744, 748 (4th Cir. 1993) (stating that "[b]ecause the language on the label was determined by the EPA to comply with the federal standards, to argue that the warnings on the label are inadequate is to seek to hold the label to a standard different from the federal one"); *Wright v. Dow Chemical U.S.A.*, 845 F. Supp. 503 (M.D. Tenn. 1993) (holding once label has been approved by EPA, manufacturer has fulfilled its duty to warn).

With these principles in mind, we turn to the allegations made in the present case to determine whether Hoelck's claims are preempted by FIFRA.

*Failure-to-Warn, Inadequate-Labeling, and Packaging Claims.*
Paragraphs VIII(B), (F), and (G) and IX(B) and (C) of Hoelck's operative petition expressly or by necessary implication challenge the warnings given on the label used by ZENECA and, under the reasoning of *Ackles, supra*, are clearly preempted by FIFRA if the label was approved by the EPA.

Paragraphs VIII(E) and IX(A) of Hoelck's petition essentially allege that ZENECA was, respectively, negligent and strictly liable for selling a combustible material in a flammable package. In other words, Hoelck alleges that the packages were negligently designed or were defective and unreasonably dangerous because of their design.

Regarding the packaging-based claim, the U.S. District Court has held:

> In contrast to the detailed statutory and regulatory regime concerning labeling and registration, the provisions for packaging are much less so. FIFRA provides only that
>
> "(c) . . . The Administrator, after notice and opportunity for hearing, is authorized—
>
> . . . .
>
> "(3) to establish standards . . . with respect to the package, container, or wrapping in which a pesticide or device is enclosed for use or consumption, in order to protect children and adults from serious injury or illness resulting from accidental ingestion or contact with pesticides or devices regulated by [FIFRA] as well as to accomplish the other purposes of [FIFRA.]"
>
> [7 U.S.C.] § 136w(c)(3). To the best of the court's knowledge, the only EPA packaging regulation concerns child-resistant packaging. 40 C.F.R. § 152.152 (1993).

*Roberson v. E.I. DuPont de Nemours & Co.*, 863 F. Supp. 929, 931 (W.D. Ark. 1994). "Certainly, nothing in the text of § 136v indicates that court's [sic] should distinguish between FIFRA's pre-emptive effect on inadequate labeling claims and its pre-

emptive effect on inadequate packaging claims, although it is troublesome to pre-empt state law causes of action in an almost entirely unregulated field." 863 F. Supp. at 932.

■ We agree that it is troubling to preempt state law causes of action in an almost entirely unregulated field; however, Congress has delegated the authority to control the design of pesticide containers to the EPA. See, e.g., 7 U.S.C. § 136q(e). In *Ackles v. Luttrell*, 252 Neb. 273, 561 N.W.2d 573 (1997), the Nebraska Supreme Court did not address the issue of whether packaging-based claims were preempted; however, its reasoning provides guidance. In discussing whether the plaintiff's labeling-based cause of action was preempted, the Nebraska Supreme Court observed that if the plaintiff were to be successful, the defendant "would be stuck between the proverbial rock and hard place in that [the defendant] would be required to use the label approved by the EPA, yet pay damages because a jury determined that such label was not sufficient." *Ackles v. Luttrell*, 252 Neb. at 283, 561 N.W.2d at 579. This same rationale applies to packaging-based claims. Allowing Hoelck's packaging-based claims to go forward would place ZENECA in the position of using EPA-approved packaging yet being liable because the packaging was deficient. We conclude that Hoelck's packaging-based claims are preempted by FIFRA if the packaging has EPA approval. See, also, *Hawkins v. Leslie's Poolmart*, 965 F. Supp. 566 (D.N.J. 1997); *Allstate Ins. Co. v. Pooltime Products, Inc.*, 846 F. Supp. 499 (E.D. La. 1994). Contra *Lyall v. Leslie's Poolmart*, 984 F. Supp. 587 (E.D. Mich. 1997) (citing *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 116 S. Ct. 2240, 135 L. Ed. 2d 700 (1996), and holding that negligent design and manufacturing claims relating to container were not preempted, because they did not conflict with statutory or regulatory guidelines, since only area of packaging for which EPA had established standards was child-resistant packaging).

## EPA Approval.

Hoelck argues that the trial court prematurely granted summary judgment on these claims, because at this point, there is no competent evidence that the labels and packages were approved by the EPA.

ZENECA submitted no proof that the packages used in 1988 and 1989 were approved by the EPA. In support of its contention that the EPA had approved the labels, ZENECA submitted the affidavit of Davidson, a regulatory product manager for ZENECA. Davidson averred that he had been regulatory product manager for 5 years, that in his position he was "responsible for regulation and compliance with all formulations of Dyfonate," that he had "work[ed] on EPA related matters for 19 years," and that "[t]he labels on all packages of Dyfonate 20-G and Dyfonate 20-IIG which were sold or offered for sale during calendar years 1988 and 1989 were approved by the [EPA] in accordance with FIFRA."

At the hearing on the motion for summary judgment, Hoelck objected to the admission of the affidavit, arguing that it failed to establish that Davidson had any personal knowledge as to the facts set forth in the affidavit, it was not the best evidence, and it was hearsay.

Neb. Rev. Stat. § 25-1334 (Reissue 1995) in pertinent part provides:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.

ZENECA contends:

> This is not a situation where an affiant is testifying as to his or her "belief" or "opinion," nor did this involve expert testimony by a lay witness. [Davidson's] competency to testify under oath as to the EPA registration and approval of the Dyfonate in question is well established by the fact that he had been the Regulatory Product Manager at [ZENECA] in charge of regulatory compliance for that very insecticide. Mr. Davidson would have been in a position to know whether the Dyfonate was submitted for registration under FIFRA or not. *Cf.* Kosowski v. City Betterment Corp., 197 Neb. 402, 249 N.W.2d 481, 483 (1977)(the "administrative manager" in charge of defend-

ant's books and records was competent to testify in an affidavit under Neb. Rev. Stat. § 27-801 R.R.S. 1943 about those matters, and they were not hearsay).

Brief for appellee at 15.

Davidson's affidavit mentions no documentation from the EPA evidencing its approval of the Dyfonate label. Davidson does not expressly aver that he had personally inspected ZENECA's EPA approval documents regarding the labels being used in the relevant time periods, and his start of employment postdated those time periods. At most, there is an implication from his affidavit that he is "in charge" of such records, as ZENECA's argument suggests. The EPA approval records themselves were not separately offered into evidence, nor were they attached to the affidavit. Business records are hearsay and therefore are inadmissible in court unless they meet the requirements of one of the exceptions to the hearsay rule. *Misle v. Misle*, 247 Neb. 592, 529 N.W.2d 54 (1995). See, also, Neb. Rev. Stat. § 27-801(3) (Reissue 1995). Absent those records in evidence, Davidson's testimony regarding what the EPA said in such documents is clearly hearsay.

Neb. Rev. Stat. § 27-803(5) (Reissue 1995) provides an exception to the hearsay rule for business records kept in the ordinary course of business. In pertinent part, § 27-803(5) provides that the following are not excluded by the hearsay rule:

A memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, other than opinions or diagnoses, made at or near the time of such acts, events or conditions, in the course of a regularly conducted activity, if it was the regular course of such activity to make such memorandum, report, record, or data compilation at the time of such act, event, or condition, or within a reasonable time thereafter, as shown by the testimony of the custodian or other qualified witness . . . .

The party seeking admission of a business record under this exception to the hearsay rule bears the burden of establishing the components of the following three-part test: First, the proponent must establish that the activity recorded is of a type that regularly occurs in the course of the business' day-to-day activities. Second, the proponent must establish that the record was

made as part of a regular business practice at or near the time of the event recorded. Finally, the proponent must authenticate the record by a custodian or other qualified witness. *Misle v. Misle, supra.* Davidson's affidavit does not address any of these three requirements and accordingly does not set forth facts sufficient to establish the admissibility of the EPA approval records, if offered, and does not affirmatively show that Davidson is competent to testify to the EPA approval as stated therein. See § 25-1334.

Even had Davidson's affidavit contained the foundational predicates to admit ZENECA's EPA approval records as business records under § 27-803(5), we believe it was objectionable as proof of such approval for yet another reason. Hoelck's objection to Davidson's testimony was also based on the best evidence rule, that is, that his testimony was not the best evidence to establish that the EPA had approved the ZENECA label. See Neb. Rev. Stat. § 27-1002 (Reissue 1995).

In *Equitable Life v. Starr*, 241 Neb. 609, 615, 489 N.W.2d 857, 862 (1992), the Supreme Court stated that the best evidence rule might more properly be called the rule for " 'production of an original writing or document.' " The court noted that in other jurisdictions, in the absence of a satisfactory explanation for nonproduction of an original document, the original-document rule bars admission of secondary evidence to prove the contents of the document. *State v. Ward*, 1 Neb. App. 558, 565, 510 N.W.2d 320, 325 (1993).

Neb. Rev. Stat. § 27-1004 (Reissue 1995) provides that secondary evidence is admissible to show the contents of a document if the original is unavailable for reasons beyond the control of the proponent of the document. Davidson's affidavit gives no indication that the EPA approval documents are, for some reason, unavailable to ZENECA, and ZENECA does not so contend.

For the reasons set forth above, we find that the trial court erred in admitting the affidavit of Davidson to the extent that it was offered as proof that the EPA had approved the label in issue. ZENECA did not submit any other evidence to support its contention that the label in question had been approved by the

EPA. Accordingly, we find that it was error for the trial court to grant ZENECA's first motion for summary judgment, because approval by the EPA is a factual predicate to the success of the entirety of ZENECA's motion.

While we must reverse the grant of ZENECA's first motion for summary judgment because its success was premised on competent evidence of the EPA's approval, for the sake of completeness we believe it is necessary to briefly address Hoelck's misbranding and negligent-testing claims.

*Misbranding.*

> [T]he preemption statute at issue, § 136v(b), does not reference state requirements relating to pesticides themselves, only to "labeling and packaging" requirements. . . . [T]his court is guided by the Supreme Court's admonition in *Cipollone [v. Liggett Group, Inc.,* 505 U.S. 504, 112 S. Ct. 2608, 120 L. Ed. 2d 407 (1992),] that where Congress enacts a provision defining the preemptive reach of a statute, "matters beyond that reach are not preempted." 505 U.S. at 517, 112 S. Ct. at 2618. This court also is mindful that the Supreme Court has expressly ruled that through the enactment of FIFRA, Congress has not "occupied the field" to the exclusion of the States and FIFRA preemption is narrowly limited by § 136v. *Wisconsin Public Intervenor v. Mortier,* 501 U.S. 597, 607-14, 111 S. Ct. 2476, 2482-87, 115 L. Ed. 2d 532 (1991).

*Lyall v. Leslie's Poolmart,* 984 F. Supp. 587, 595 (E.D. Mich. 1997).

In Hoelck's first claim of negligence, paragraph VIII(A), he alleges that ZENECA was negligent "[i]n misbranding by stating that Dyfonate 20-G is 'considered noncombustible' when it is highly combustible under the conditions likely to occur during use by consumers." The district court's order swept this allegation into its finding of preemption along with the labeling- and packaging-based claims.

ZENECA argues that "the claim of misbranding is the same as a claim that the label was inadequate." Brief for appellee at 27. ZENECA's argument is not unreasonable. However, in actions not involving extraordinary remedies, general pleadings

are to be liberally construed in favor of the pleader. *Torrison v. Overman*, 250 Neb. 164, 549 N.W.2d 124 (1996). We believe that Hoelck's allegation of "misbranding," liberally construed, could also be viewed as implicating ZENECA's failure to disclose to the EPA the known combustible effects of Dyfonate 20-G.

Certainly, combustibility is an inherent characteristic of a product and presumably an element of the disclosure process. To the extent that Hoelck's claim of "misbranding" is, in substance, based upon ZENECA's failure to disclose relevant information to the EPA, it is not preempted. See, *Worm v. American Cyanamid Co.*, 5 F.3d 744 (4th Cir. 1993) (holding state tort liability for failure to comply with federal standard not preempted); *Roberson v. E.I. DuPont de Nemours & Co.*, 863 F. Supp. 929, 933 (W.D. Ark. 1994) ("[i]f it turns out that material information was withheld from the EPA, then inadequate packaging or labeling claims based on those facts will not interfere with an EPA determination. [Such decision] will aid the EPA in guarding the integrity of the registration process by giving pesticide manufacturers an incentive to place all relevant facts before the EPA"); *Higgins v. Monsanto Co.*, 862 F. Supp. 751 (N.D.N.Y. 1994) (holding inadequate-labeling and failure-to-warn claims are preempted by FIFRA but plaintiff's claims based upon failure to disclose information to EPA are not preempted). See, also, *National Bank of Commerce v. Kimberly-Clark Corp.*, 38 F.3d 988 (8th Cir. 1994) (citing with approval reasoning of *Worm v. American Cyanamid Co., supra*). Contra *Papas v. Upjohn Co.*, 985 F.2d 516, 519 (11th Cir. 1993) (holding "it is for the EPA Administrator, not a jury, to determine whether labelling and packaging information is incomplete or inaccurate").

Based upon the foregoing, to the extent Hoelck's claim found in paragraph VIII(A) intended to state an action for failing to disclose information to the EPA, it is not preempted by FIFRA. However, if it is labeling based, as discussed in *Ackles v. Luttrell*, 252 Neb. 273, 561 N.W.2d 573 (1997), it is preempted. Proper pleading requires a petition to state in logical and legal form the facts which constitute the cause of action, define the issues to which the defendant must respond at trial, and inform

the court of the real matter in dispute. *McCurry v. School Dist. of Valley*, 242 Neb. 504, 496 N.W.2d 433 (1993). In its current form, the petition does not sufficiently apprise ZENECA or the court as to what Hoelck's "misbranding" claim is based upon. However, ZENECA has not challenged the sufficiency of the pleadings. Therefore, on remand Hoelck shall be granted an opportunity to amend his petition to state a cause of action. See *Ackles v. Luttrell, supra.*

*Negligent Testing.*

In Hoelck's final claim, found to be preempted, he alleged that ZENECA failed to investigate whether the Dyfonate 20-G bags could be burned safely. ZENECA contends that this claim is preempted because "at its core [it] is a failure-to-warn claim which questions the adequacy of the disposal statements 'by [ZENECA]' on the label." Brief for appellee at 29. Nearly every court that has had the opportunity to address this issue has determined that claims based upon negligent testing are not preempted. See, *Higgins v. Monsanto Co., supra* (holding claims for negligent testing, manufacturing, and formulating are not preempted by FIFRA); *Wright v. Dow Chemical U.S.A.*, 845 F. Supp. 503 (M.D. Tenn. 1993) (FIFRA does not preempt state law regarding nonlabeling claims for defective design and failure to properly test and study); *DerGazarian v. Dow Chemical Co.*, 836 F. Supp. 1429 (W.D. Ark. 1993) (FIFRA does not preempt claims for failure to use ordinary care in formulation, inspection, and testing); *Williams v. State*, 640 So. 2d 365 (La. App. 1994).

We find that Hoelck's claim, to the extent it is based upon ZENECA's negligent testing of its product, is not preempted by FIFRA, even assuming EPA approval of the Dyfonate label.

### SECOND MOTION FOR SUMMARY JUDGMENT

At the hearing on the second motion for summary judgment, ZENECA argued that Hoelck's final negligence claim, VIII(D), that ZENECA was negligent "in marketing a combustible insecticide when other reasonable alternatives were available to it," should be dismissed because Hoelck did not present any evi-

dence that reasonable alternatives were available. Although the trial court did not amplify its reasoning in concluding that there were no genuine issues of material fact as to this allegation, Hoelck argues that the court apparently dismissed his claim because he failed to present evidence of reasonable alternatives' being available. Citing *Rahmig v. Mosley Machinery Co.*, 226 Neb. 423, 412 N.W.2d 56 (1987), Hoelck contends that Nebraska no longer requires proof of the availability of an alternative design for a claimant to recover under this kind of claim and thus that the district court erred in granting summary judgment on this issue. Hoelck's argument is partially correct. In *Rahmig*, the Nebraska Supreme Court held that proof of alternative design is no longer necessary to recover under a claim of defective design. See, also, *Kudlacek v. Fiat S.p.A.*, 244 Neb. 822, 509 N.W.2d 603 (1994).

One of the difficulties with addressing the grant of summary judgment as to this allegation of negligence is that it is far from clear exactly what it is based on. Hoelck has cited no authority, nor can we imagine any, for the proposition that "marketing a combustible" substance, be it an insecticide or some other product, is negligence per se. In apparent recognition of this fact, Hoelck added the phrase, "when other reasonable alternatives were available."

Perhaps Hoelck was attempting to allege a "defective-design claim" as was involved in *Rahmig* and *Kudlacek*. If so, he did not do so, and we must review the grant of a summary judgment on the pleadings presented, not on what a party on appeal contends he or she intended.

Hoelck pleaded that ZENECA was negligent "in marketing a combustible insecticide when other reasonable alternatives were available to it." He now alleges the trial court committed error in requiring him to prove what he pleaded. A party cannot complain of error which the party has invited the court to commit. *Gustafson v. Burlington Northern RR. Co.*, 252 Neb. 226, 561 N.W.2d 212 (1997); *Hoover v. Burlington Northern RR. Co.*, 251 Neb. 689, 559 N.W.2d 729 (1997). It is well settled that the primary purpose of the summary judgment statute is to pierce sham pleadings and to dispose of those cases where

there is no genuine claim or defense. *Ashby v. First Data Resources*, 242 Neb. 529, 497 N.W.2d 330 (1993).

In an interrogatory, ZENECA requested that Hoelck "set forth in the [sic] detail the factual basis for the allegation . . . that [ZENECA] was negligent in 'marketing a combustible insecticide when other reasonable alternatives were available to it,' including in your answer a specific statement of what 'other reasonable alternatives' are referred to in that allegation."

Hoelck responded:

> The factual basis for the allegation in the Amended Petition is that [Hoelck's] experts have proven that the insecticide marketed by [ZENECA] is in fact combustible. [Hoelck] does not purport to have the scientific resources necessary to develop a safer product and does not intend to attempt to prove specifically how a noncombustible insecticide should be manufactured.

At the hearing on the motion for summary judgment, counsel for Hoelck informed the court that this allegation of negligence "d[idn't] merit trial."

■ Summary judgment is proper when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Marrs v. Keelan*, 254 Neb. 723, 578 N.W.2d 442 (1998). The record before us establishes that there is no factual basis for this allegation of negligence. Accordingly, the district court did not err in granting ZENECA's motion for summary judgment on this issue.

## CONCLUSION

*Ackles v. Luttrell*, 252 Neb. 273, 561 N.W.2d 573 (1997), conclusively establishes that FIFRA preempts all labeling-based claims. Based on the rationale of *Ackles*, claims based on the defective design of packaging are presumably also preempted. But a precursor to successfully invoking the preemption for any such claims is a showing that the relevant label and package were approved by the EPA. In the present case, ZENECA failed to adduce competent evidence of such approval

and it was error for the trial court to grant ZENECA's first motion for summary judgment based on the preemption doctrine, and that order is reversed. The trial court did not err in granting ZENECA's second motion for summary judgment, and that order is affirmed. We remand this cause to the trial court.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED.