Robert HUGHES, et al., Plaintiffs,

v.

**SOUTHERN STATES COOPERATIVE INC., et al., Defendants.**

No. CIV.A.01–D–915–N.

United States District Court,
M.D. Alabama,
Northern Division.

Oct. 16, 2001.

Pike Farmers, Pro se.

Joseph A. Morris, Morris Cary & Andrews LLC, Dothan, AL, W. Keith Watkins, Calhoun, Faulk, Watkins & Clower, Troy, AL, for Plaintiffs.

Lisa B. Hansen, Vickers, Riis, Murray & Curran, L.L.C., F. Grey Redditt, Jr., Vickers, Riis, Murray & Curran, L.L.C., L. Thomas Styron, Vickers, Riis, Murray & Curran, L.L.C., Mobile, AL, for Defendants.

## MEMORANDUM OPINION
## AND ORDER

DE MENT, District Judge.

Before the court is Plaintiffs' Motion To Remand, filed August 15, 2001. Defendants filed a Brief in Opposition on August 30, 2001. Construing the facts in the light most favorable to Plaintiffs and having carefully considered the arguments and the record as a whole, the court finds that Plaintiffs' Motion To Remand is due to be granted.

## DISCUSSION

Plaintiffs are residents of Alabama where they pursue a livelihood farming peanuts. They bring the present action seeking damages for the peanut crops of 1999 which were afflicted with a leaf spot disease, notwithstanding the fact that they had sprayed the crops with a fungicide designed to protect against this. Indeed, they allege that the Novartis Tilt/Bravo Fungicide ("fungicide") failed because it was mislabeled as to quantity. Specifically, the directions called for a mixture of 20 ounces of Tilt with 160 ounces of Bravo 720, but, in the course of using the fungicide, Plaintiffs discovered that the relevant receptacle contained only 16 ounces of Tilt rather than 20 ounces as marketed and labeled. Plaintiffs contend that, but for the subsequent chemical inaccuracy, their crops would have withstood the blight.

The present action was brought in the Circuit Court of Pike County, Alabama, against the fungicide's manufacturer, packager, and retailers. Plaintiffs allege state law claims of fraud and misrepresentation, suppression, breach of warranty, negligence/willfulness/wantonness, and conspiracy. Of all the Defen-

dants, only one of the retailers, Pike Farmers Cooperative, Inc. ("Pike"), is a resident of Alabama. The foreign Defendants removed the action to federal court on the basis of diversity, alleging that Pike was fraudulently joined.[1] Specifically, they allege that all state law claims against Pike are preempted by the Federal Insecticide, Fungicide, and Rodenticide Act, 7 U.S.C. § 136(v) ("FIFRA").[2]

FIFRA expressly allows Alabama to "regulate the sale or use of any federally regulated pesticide ... but only if and to the extent the regulation does not permit any sale or use prohibited by" FIFRA. 7 U.S.C. § 136(v)(a). This language has been limited by a broad interpretation of FIFRA's mandate that Alabama "shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required" by FIFRA. *Id.* at § 136(v)(b). Interpreting the term "requirements" to include common law suits for damages, the Eleventh Circuit has held that FIFRA preempts claims against manufacturers "to the extent that such actions are predicated on claims of inadequate labeling or packag-

ing."[3] *Papas v. Upjohn Co.*, 985 F.2d 516, 520 (11th Cir.1993).

Defendants make a strong case that the present matter is so "predicated" since the gravamen of Plaintiffs' cause of action is that they were harmed because the fungicide vessel contained four ounces less than the label stated. Indeed, the federal regulations enacted under FIFRA require that labels include the net weight of the product, and that the net weight be consistent with that noted on the label. *See* 40 C.F.R. § 156.10(d)(6); *see also* 7 U.S.C. § 136(q)(2)(C)(iii) (defining as "misbranded" a label not clearly reading the net weight of the content). Before addressing the preemptive effect of such language upon each individual claim, however, some general discussion of preemption in the FIFRA context is warranted.

 Determining the scope of a statutory provision's preemptive effect is guided by two considerations. *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996). The first is rooted in concerns of federalism. Even in statutes like FIFRA where a domain is expressly preempted, the Supreme Court has held that this domain should be con-

1. The parties do not contest that the amount in controversy exceeds $75,000, as required under 28 U.S.C. § 1332.

2. FIFRA does not completely preempt all state common law claims, and, as such, it does not provide a federal question basis for removal. *E.g., Hart v. Bayer Corp.*, 199 F.3d 239, 243–46 (5th Cir.2000). Its preemptive effect, however, abrogates a private right of action. *See Fiedler v. Clark*, 714 F.2d 77, 79 (9th Cir.1983). The thrust of Defendants' argument is that, since FIFRA preemption abrogates all claims against Pike, Pike is an improper party to the present action and complete diversity exists.

3. Plaintiffs' contention that this rule applies only to manufacturers, thereby exempting Pike from its reach, is without merit. Cer-

tainly *Papas* concerned only the manufacturer of a pesticide, but the court sees no reason to limit its scope as such. Congress intended to regulate the labeling of pesticides, making no distinction between retailers and manufacturers. Indeed FIFRA explicitly prohibits "any person in any State to distribute or sell" pesticides which violate delineated requirements. 7 U.S.C. § 136j(a)(1). Furthermore, FIFRA requires any "wholesaler, dealer, retailer, or other distributor" to file reports with the EPA. *Id.* at § 136j(a)(2)(N). Therefore, the court follows the example of the Ninth Circuit, which held that, where "the distributor's liability is essentially predicated upon the language in the manufacturer's label, we apply FIFRA's preemption provision equally to manufacturers and distributors." *Taylor AG Industries v. Pure–Gro*, 54 F.3d 555, 562 (9th Cir.1995).

strued narrowly in light of a "presumption against the pre-emption of state police power regulations." *Id.* (quoting *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 518, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992)). The second concerns legislative intent. While the preemption statute should be construed narrowly, foremost in the analysis should be "the way in which Congress intended the statute and its surrounding regulatory scheme to affect business, consumers, and the law." *Id.* at 486, 116 S.Ct. 2240. This understanding, in turn, is driven by the language and overall framework of the statute, as well as the legislative history. *Cipollone*, 505 U.S. at 517–23, 112 S.Ct. 2608.

■■■ FIFRA, originally enacted in 1947, was completely revised in 1972. The purposes identified on the bill at this time were to "(A) regulate the use of pesticides to protect man and his environment; and (B) extend Federal pesticide regulation to actions entirely within a single State." S.Rep. No. 92–838, at 1 (1972), *reprinted in* 1972 U.S.C.C.A.N. 3993, 3993. These purposes suggest both horizontal and vertical aspects of FIFRA's preemptive domain. As to the vertical aspect, the 1972 revision expanded a statutory domain which had previously been confined to interstate activities to now encompass even intrastate pesticide usage. *Id.* at 3998. Whatever the breadth of the preemptive domain, its depth was clear: states were now precluded from "impos[ing] or continu[ing] in effect *any* requirement for labeling or packaging." 7 U.S.C. § 136v(b) (emphasis added).

The horizontal aspect, or the breadth of the "labeling or packaging" language, is given shape by the stated purpose of the statute, namely the "protection against any unreasonable adverse effects on the environment." *Id.* at § 136(x). In other words, Congress intended to provide uniform standards so as to avoid "any unrea-

sonable risk to man or the environment, taking into account the economic, social, and environmental costs and benefits of the use of any pesticide." *Id.* at § 136(bb). In light of these considerations, the EPA is to make a determination as to whether a particular pesticide should be registered, and, if so, under what circumstances. *See* 1972 U.S.C.C.A.N. at 3996–97. The factors considered in this regard include whether it performs in accordance with the claims stated on the label, whether the label complies with the overall regulatory requirements, and whether the intended performance, in widespread usage, will adversely affect the environment. 7 U.S.C. § 136a(c)(5).

In short, FIFRA is concerned with constraining the harmful risks that pesticides pose to the environment and to the health of those individuals who happen to come into contact with such pesticides. In the interest of overall uniformity, Congress deemed it proper to delegate all authority pertaining to the labeling of these harmful chemicals to one expert administrative body. It is in this vein that the Eleventh Circuit has concluded that when "a pesticide manufacturer places EPA-approved warnings on the label and packaging of its product, its duty to warn is satisfied." *Papas*, 985 F.2d at 519.

Unlike the *Papas* action, however, Plaintiffs do not bring the present action asserting that Defendants have in any way harmed either the environment or their health. Indeed, the present action concerns mislabeling only in the loosest sense. No contention is made that the alleged mislabeling as to weight in any way made the fungicide more or less harmful to the environment. Plaintiffs do not even allege that the labels fail to comply with FIFRA regulations. Plaintiffs merely complain that Defendants affixed the wrong label to the product, and then represented that the

label directed the appropriate usage of that product. Whether this be the result of fraud or negligence on the part of Defendants, it is not clear whether the EPA could have prevented the alleged harm.

In this regard, the court finds apposite the reasoning of *Roberson v. E.I. Dupont De Nemours & Co.,* 863 F.Supp. 929 (W.D.Ark.1994). Much like the present case, the *Roberson* plaintiffs brought a claim against the manufacturers of a fungicide alleging that the label misdirected the plaintiffs in their application of the fungicide, thereby causing their crops to suffer. *Id.* at 931. The court found that the defendants were estopped from asserting a preemption defense insofar as the labels approved by the EPA were based on false information. *Id.* at 932–33. The EPA is a passive agency, relying upon the information provided by pesticide manufacturers; the efficacy of the FIFRA registration process depends upon the relaying of truthful and accurate information. *See id.* Implicit in this argument is the idea that FIFRA preemption should not avail itself to actions over which the EPA regulatory role could not have prevented the alleged harm.

█ Indeed, the present causes of action simply do not concern the quality of the language stated upon the label, but merely Defendants' failure to properly affix that label. This is the basis upon which the court draws a distinction between the precedent it is bound to follow in *Papas.* The *Papas* court recognized a rule from which the present court does not deviate: where a pesticide manufacturer faces liability for harm to the environment or to humans based upon an allegedly inadequate statement of the risks on its label, the claims brought therein are preempted by FIFRA. *See Papas,* 985 F.2d at 518 n. 2 ("Under FIFRA, a pesticide is misbranded if the label does not contain warnings or directions for use which, if complied with,

are 'adequate to protect health and the environment.'") (citing 7 U.S.C. § 136(q)(1)(F),(G)). In the present matter, however, the court merely finds that this rule does not extend to allegations of crop damage resulting from the misapplication of an EPA-approved label to a container.

█ Distinguishing *Papas* in this manner is consistent with the Supreme Court's mandate that preemption statutes should be construed narrowly: the court finds that Congress intended for FIFRA to preempt mislabeling actions concerning harm to the environment or to people, but not actions concerning the misapplication of labels that affect the quality of fungicide performance. Such an interpretation in no way "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Medtronic, Inc.,* 518 U.S. at 507, 116 S.Ct. 2240 (Breyer, J., concurring) (quoting *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581 (1941)). Indeed, "there is no general, inherent conflict between federal pre-emption of state warning requirements and the continued vitality of state common law damages actions." *Cipollone,* 505 U.S. at 518, 112 S.Ct. 2608. This is particularly true when the damages actions in no way relate to the warnings required under the federal statute. Although, as discussed above, the regulations require that the label accurately state the weight of a particular pesticide, the preemptive effect of this requirement should be narrowly construed as one aimed at health and environmental concerns rather than product performance. Courts have repeatedly drawn such a distinction in determining FIFRA's preemptive scope. *See, e.g., Higgins v. Monsanto,* 862 F.Supp. 751, 759 (N.D.N.Y.1994) (finding that rule of narrow construction in preemption context allows strict liability claim to survive FIFRA preemption);

*Bingham v. Terminix Int'l Co. L.P.*, 850 F.Supp. 516, 522 (S.D.Miss.1994) (finding that implied warranty of merchantability claim, unrelated to labeling, not preempted by FIFRA); *Casper v. E.I. Du Pont De Nemours & Co.*, 806 F.Supp. 903, 909 (E.D.Wash.1992) (finding that FIFRA does not preempt claims relating to implied warranty of fitness).

 Since in the context of a motion to remand, it "should resolve all questions of fact and controlling law in favor of" Plaintiffs, *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir.1989), the court finds that none of the present claims brought against Pike are preempted. Plaintiffs may be able to demonstrate that Pike was aware of this problem, and thus is liable under a theory of fraud, or they may establish merely that Pike should have known that the products were mislabeled and, as such, is liable for negligence. Furthermore, the court finds that Plaintiffs might be able to demonstrate that Pike errantly warranted the propriety of a particular usage of the fungicide. Finally, there is a possibility, albeit a slim one, that the conspiracy claim is meritorious; at the very least, Defendants' only argument against such a claim is that the underlying claims have been preempted.

Whether the facts will support a finding of liability against Pike is not a concern of the court. *See Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir.1998) ("[Plaintiffs] need not have a winning case against the allegedly fraudulent defendant; [they] need only have a *possibility* of stating a valid cause of action in order for the joinder to be legitimate.") (emphasis in original). For present purposes, it is enough for the court to conclude that Plaintiffs' claims against Pike are not preempted by FIFRA, and there is a possibility that at least one state claim is viable. Therefore, the court finds that Pike was not fraudulently joined, and that

Defendants have failed to establish complete diversity as required under *Strawbridge v. Curtiss*, 3 Cranch 267, 7 U.S. 267, 2 L.Ed. 435 (1806). As such, the court finds that it lacks subject matter jurisdiction to proceed further on the present matter.

## ORDER

For the above-stated reasons, it is CONSIDERED and ORDERED that Plaintiffs' Motion To Remand be and the same is hereby GRANTED, and that this action be and the same is hereby REMANDED to the Circuit Court of Pike County, Alabama, pursuant to 28 U.S.C. § 1447(c).

The Clerk of Court is DIRECTED to take all steps necessary to effectuate said remand.