James L. HURLEY, Jr., etc., et al.,
Plaintiffs-Appellants,

v.

LEDERLE LABORATORIES DIVISION OF AMERICAN CYANAMID CO., et al., Defendants-Appellees.

No. 87–2578.

United States Court of Appeals,
Fifth Circuit.

Aug. 17, 1988.

Marcus A. Pitre, H.P. Wright, Wright & Pitre, Port Neches, Tex., Andrew W. Dodd, Denver & Dodd, Torrance, Cal., for plaintiffs-appellants.

Richard L. Josephson, Patrick C. Appel, Baker & Botts, Houston, Tex., for defendants-appellees.

Richard T. McCarroll, Demaris Gullekson, Brown, Maroney, Rose, Barber & Dye, Austin, Tex., O.J. Weber, Mehaffy, Weber, Keith & Gonsoulin, Beaumont, Tex., for Connaught Laboratories.

William G. Cole, Appellate Staff, Civil Div., U.S. Dept. of Justice, Washington, D.C., for amicus-U.S. Dept. Health and Human Services.

Before WISDOM, REAVLEY and JOLLY, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

James Hurley III and his parents appeal the district court's partial summary judgment against their products liability claims arising from the severe neurological damage the minor Hurley sustained after inoculation with Lederle's pertussis (whooping cough) vaccine, 651 F.Supp. 993. Since we disagree with the district court that federal law preempts the state products liability law, and since our examination of the record reveals factual questions remaining on the other issues, we reverse and remand.

I

James Hurley III was less than a year old when he was vaccinated with a DPT vaccine, which includes three separate components to immunize against diptheria, pertussis, and tetanus. The vaccination was done with a "whole cell" pertussis component[1] manufactured by Lederle Laborato-

1. The diptheria and tetanus components are "toxoids": bacterial toxins artificially modified to eliminate their disease-causing potential. These virtually never cause serious adverse reactions. The pertussis component of the defendant's DPT vaccine, however, is a "whole cell" vaccine: it contains, in an inactive state, all of the components of the pertussis cell. Ad-

ries. The child received the vaccine in the office of his personal doctor. Shortly after vaccination, the child sustained severe and irreversible neurological damage. Although Lederle included a warning in its package, this warning was never communicated to the parents. The doctor testified that the warning was adequate to apprise him of the risks inherent in the vaccine. The warning stated:

ADVERSE REACTIONS

. . . .

Neurological disorders such as encephalopathy possibly due to the pertussis component have been reported to occur rarely following the injection of this product and they may be fatal or result in permanent damage to the central nervous system.

. . . .

Routine immunization should be postponed or avoided in patients with acute infections or a personal or family history of neurological disturbances.

James Hurley III and his parents ("Hurley") brought this diversity action, basing their claims on the Texas law of negligence (alleging a failure to warn adequately and a failure to design the product properly), warranty (alleging breach of an express and implied warranty that the product would not injure the user in normal use), and strict products liability (alleging the production and marketing of an unreasonably dangerous product). The Hurleys maintain that the drug was unreasonably dangerous because there are alternatives to the "whole cell" pertussis vaccine currently in use in Europe and Japan. The plaintiffs contend that studies of these alternative vaccines show that they are as effective as the "whole cell" vaccine but less likely to cause the type of neurological damage sustained by their child. Although an FDA-approved vaccine similar to these alternatives was sold in the United States from 1962 to 1977, the manufacturer withdrew from the entire vaccine market and none is currently licensed by the FDA for use in the United States.

verse reactions to this component are more

The plaintiffs also seek punitive damages under Texas law, alleging that the defendants recklessly, knowingly, and willfully failed to warn adequately of possibly severe adverse reactions to their product and to rectify the product's dangerous design.

Lederle maintains that the Hurleys' claims are preempted by federal laws that promote widespread vaccination. Lederle also argues that its warning was adequate, and that the learned intermediary doctrine applies, so that once it had warned Dr. Lanier, it had satisfied its duty.

## II

The district court granted partial summary judgment in favor of the defendant, holding that federal laws, such as the Federal Food, Drug and Cosmetic Act ("FDCA"), 21 U.S.C. § 301 *et seq.*, and the Public Health Service Act ("PHSA"), 42 U.S.C. §§ 247b and 262, and their attendant regulations, preempted any state law claims based on the inadequacy of Lederle's DPT product warning as well as any claims based on Lederle's defective design of the DPT vaccine. Moreover, the district court held under the Texas "learned intermediary" doctrine that the manufacturer had a duty to warn the prescribing physician only, rather than the patient or his parents. The district court also held that Lederle's product warning was adequate "as a matter of law" because the prescribing physician, Dr. Lanier, testified that he found it adequate. The plaintiff appeals.

## III

### A.

Hurley first challenges the district court's decision that federal law preempts his state law tort claims. The concept of preemption has its roots in the supremacy clause: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof ... shall be the supreme law of the Land...." United States Const. art. VI. There are basically two types of preemption, express and implied. *Hillsborough County v. Medical Labora-*

common.

*tories, Inc.*, 471 U.S. 707, 712–14, 105 S.Ct. 2371, 2374–76, 85 L.Ed.2d 714 (1985). Lederle's argument and the district court's ruling are based on the contention that, without relief from state law products liability for the pertussis vaccine, manufacturers of the whole cell vaccine will raise prices substantially or withdraw from the market. Thus, Lederle argues and the district court ruled, preemption of state law products liability is implied by the federal scheme to encourage vaccination.

Although the district court arrived at its holding after careful and thoughtful consideration, we must conclude that its holding is flawed. To date, the great majority of United States district courts which have addressed this issue have ruled against pre-emption.[2] Significantly, the judge who wrote the original opinion in *Morris v. Parke-Davis & Co.*, which found preemption, and upon which the district court in this case relied, subsequently withdrew and reversed his opinion to find no preemption in the light of the Supreme Court's analysis in *Hillsborough County v. Automated Medical Laboratories, Inc.*, 471 U.S. 707, 105 S.Ct. 2371, 85 L.Ed.2d 714 (1985). *Hillsborough* concerned the preemptive ef-

fects of laws of the same type as those in issue here: FDA testing and approval of medical products.

■ As a matter of law, the district court's grounds for announcing such a rule cannot survive analysis. Although, as we shall later see, there are some instances in which state law may conflict with individual federal laws or regulations, Lederle's arguments and the district court's holding are so broadly phrased as to preempt all of state products liability law for the manufacture and distribution of the pertussis vaccine. Neither the Food, Drug and Cosmetics Act nor the Public Health Service Act *explicitly* preempts state law. Courts should be reluctant to find that federal law *implicitly* preempts state law. *Hillsborough*, 471 U.S. at 714, 105 S.Ct. at 2375. They may do so only "where the scheme of federal regulation is sufficiently comprehensive to make reasonable the inference that Congress 'left no room' for supplementary state regulation" or "where the field is one in which 'the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." *Id.* at 713, 105 S.Ct. at 2374.[3] FDA regulation does not

**2.** The following district court opinions have found against preemption: *Smith v. Wyeth Laboratories, Inc.*, No. CA–84–2002, slip op. (S.D. W.Va. Aug. 21, 1986); *Milam v. Lederle Laboratories Division of American Cyanamid Co.*, No. CA–4–85–92–K, slip op. (N.D.Tex. Oct. 15, 1986); *Jeski v. Connaught Laboratories, Inc.*, No. A–84–CA–395, slip op. (W.D.Tex. Dec. 18, 1986); *MacGillivray v. Lederle Laboratories Division of American Cyanamid Co.*, 667 F.Supp. 743 (N.D. N.M. 1987); *Morris v. Parke-Davis & Co.*, 667 F.Supp. 1332 (C.D.Cal. 1987); *Knudsen v. Connaught Laboratories*, 691 F.Supp. 1346 (M.D.Fla.1987); *Martinkovic v. Wyeth Laboratories*, 669 F.Supp. 212 (N.D.Ill.1987); *Koehler v. Wyeth Laboratories*, No. 85–284–C (S.D.Ind. Sept. 8, 1987) [available on WESTLAW, 1987 WL 47831]; *School v. Lederle Laboratories and Connaught Laboratories, Inc.*, No. Civ. 85–409–TUC–RMB, slip op. (D.Ariz. Nov. 25, 1987); *Percival v. American Cyanamid Co. d/b/a/ Lederle Laboratories*, No. Civ. 85–2671–P, slip op. (D.Okla. Nov. 25, 1987) [available on WESTLAW, 1987 WL 46954]; *Patten v. Lederle Laboratories*, 655 F.Supp. 745 (D.Utah 1987); *Wack v. Lederle Laboratories*, 666 F.Supp. 123 (N.D.Ohio 1987); *Graham v. Wyeth Laboratories*, 666 F.Supp. 1483 (D.Kan.1987); *Foyle v. Lederle Laboratories*, 674 F.Supp. 530 (E.D.N.C.1987).

Several state courts have also found no federal preemption: *Shepherd v. Lederle Laboratories*, No. 85–20330 (Cr.Ct. Broward County, Fla., Feb. 3, 1988); *Duncan v. Connaught Laboratories, Inc.*, No. 86–CVS888 (Sup.Ct. Columbus County, N.C., March 24, 1988); *Reed v. Connaught Laboratories*, 1426 Civil of 1985, (Court of Common Pleas, Monroe Co., Pa., Dec. 3, 1987).

Although the district court in *Abbott v. American Cyanamid*, No. 86–0857–A, mem. op., (E.D.Va. March 9, 1987), ruled that federal law preempted state tort remedies for DPT vaccination injuries, the Fourth Circuit recently reversed that decision, using reasoning which closely resembles our own. 844 F.2d 1108 (1988).

**3.** Even where Congress has not completely displaced state regulations, specific state laws will be preempted (1) when simultaneous compliance with the requirements of federal and state law is impossible, or (2) when compliance with state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* at 713, 105 S.Ct. at 2375.

generally preempt stricter state law standards for medical products. *Id.* at 717–22, 105 S.Ct. at 2377–80. Moreover, this and other federal courts have already ruled that FDA regulation does not preempt the types of state law duties which are the basis of the plaintiffs' claims: the duty to warn of product risks, *e.g. Osburn v. Anchor Laboratories, Inc.*, 825 F.2d 908, 911–12 (5th Cir.1987), and the duty not to place unreasonably dangerous products into commerce. *See, e.g.*, district court cases discussed in note 2 above. It is true in theory that a policy-maker could rationally decide to relieve pertussis vaccine manufacturers of liability for product defects to ensure a reliable supply of the vaccine or to lower its cost. Nonetheless, because the absence of products liability may discourage vaccine use by increasing quality uncertainty and forcing users to bear the cost of any adverse reaction to vaccination, the ultimate effect on vaccination levels is too uncertain for a court to intrude into what is essentially a policy question. Moreover, it is not clear that the cost of compensating children injured by the vaccine would drive vaccine manufacturers from the business; the manufacturers may be able to raise prices and preserve their profit margins. Because the vaccine price is paid by the federal government, this would make the vaccination program a greater burden on the federal fisc, but it would not discourage parents from having their children vaccinated. Accordingly, the decision to preempt state law products liability would be a difficult one for a policy-maker and it is not appropriate for us to assume that decision has been made based on such inconclusive evidence.

Lederle argues that, because the FDA has not approved marketing of any alternative to the whole-cell vaccine, "the scheme of federal regulation" in this case is to encourage vaccination with the whole-cell vaccine in particular. We cannot accept this assumption because the FDA is a passive agency: it considers whether to approve vaccine designs only if and when manufacturers come forward with a proposal. *See Osburn*, 825 F.2d at 912. Thus, the absence of FDA-approved alternatives to the whole-cell vaccine does not indicate FDA disapproval of any such alternative. There is no basis for finding a federal interest in a particular form of the pertussis vaccine.

Lederle also argues that the Public Health Service Act and its attendant regulations represent a pervasive federal scheme, and as such, preempt state law products liability for vaccine manufacturers. As Justice Marshall explains in *Hillsborough*, this argument is over inclusive:

> As a result of their specialized functions, agencies normally deal with problems in far more detail than does Congress. To infer preemption whenever an agency deals with a problem comprehensively is virtually tantamount to saying that whenever a federal agency decides to step into a field, its regulations will be exclusive.

105 S.Ct. at 2377. Thus, the Supreme Court has hesitated to infer such preemption. For example, in *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 104 S.Ct. 615, 78 L.Ed.2d 443 (1984), the Supreme Court found that the highly regulated scheme established by the Atomic Energy Act of 1954 did not implicitly preempt state tort law liability for nuclear power plant accidents. If the comprehensive and intricate plan of AEA regulation does not implicitly preempt state tort law by taking over the entire field, there is no reason to think that Congress intended the PHS vaccination program it approved in 1962, however "aggressive" it might be, to include—by implication—a holiday from state products liability law for vaccine manufacturers.

Finally, we believe that any case for preemption is doomed by the National Childhood Vaccine Injury ["NCVI"] Act of 1986, 42 U.S.C. §§ 300aa–33. Although the NCVI Act was passed after this case was filed, it is relevant as proof that Congress intends no preemption of the state law liability of vaccine manufacturers. The NCVI Act clearly states that state law remedies apply to the manufacture and sale of vaccines and it even makes recovery easier for injured consumers.

In sum, it is possible to construct sound policy arguments in favor of preemption in this case, but there is virtually no indication in the relevant law that Congress or the FDA explicitly or implicitly accepted them.

## B.

■ Next we consider whether the doctrine of the learned intermediary applies in this case. This doctrine applies when a patient receives a drug or vaccination through a doctor who weighs the risks and benefits, and makes the decision to administer it. In such a case, the fact that the manufacturer has adequately warned the prescribing physician will protect it from liability to the patient for failure to warn. *Reyes v. Wyeth Laboratories*, 498 F.2d 1264 (5th Cir.1974). Although the district court considered this doctrine, it did not analyze whether the "mass immunization" exception to that doctrine applies. We therefore turn to examine that question now. . This exception becomes applicable when vaccines are used in mass immunization programs "where no individualized medical judgment intervenes between the manufacturer ... and the ultimate consumer.... [In such a case,] it is the responsibility of the manufacturer to see that the warnings reach the *consumer*, either by giving the warning itself, or by obligating the purchaser to give the warning." *Id.* at 1276. Several issues concerning this question will be evident to the district court on remand. First, the learned intermediary doctrine relates only to the issue of whom the manufacturer warned. It does not govern the adequacy of the warning. The doctrine, if it applies, will foreclose any question whether the manufacturer warned the proper party, since it is settled that the manufacturer did provide a warning in the package it sent to Dr. Lanier. Even assuming that it does apply, however, the question remains whether the warning adequately apprised Dr. Lanier of the risks attending the DPT vaccine. (Dr. Lanier testified that he considered the warning adequate, but this testimony does not dispose of the question. Although his testimony is competent on the issue, the adequacy of

the warning is not a matter that can be conclusively resolved solely on the basis of the administering physician's opinion.) If the learned intermediary doctrine does not apply, the general rule applies that the ultimate consumer must be warned, in this case the parents of James Hurley III.

■ On the record as it now stands, it seems quite possible that the learned intermediary doctrine will apply, since James Hurley III received the vaccine in the office of his own personal physician. We must remand this issue, however, because some questions of fact remain as to the circumstances surrounding James' vaccination. The plaintiffs contend that it took place in a "clinic-like" atmosphere, wherein a nurse administered the vaccine as a routine matter, and the prescribing physician never saw the patient at all and, in fact, was not even in the office. The record, however, does not reflect whether Dr. Lanier was familiar with the patient or had other contact with him. As we recently observed in *Osburn v. Anchor Laboratories, Inc.*: "[T]he rationale underlying the learned intermediary doctrine is that by virtue of his medical expertise, a physician has knowledge not only of the dangerous propensities of drugs, but also of the particular 'susceptibilities of his patient[s].'" 825 F.2d 908, 913 (5th Cir.1987) (quoting *Reyes*, 498 F.2d at 1276). Thus, the question of fact remains, whether Dr. Lanier made a professional judgment about the safety and usefulness of the DPT vaccine for James Hurley III, or whether the immunization procedure was more like that of a clinic in which no doctor was involved in administering the drug.

■ We do not agree, and we do not believe that the Texas courts would agree that the manufacturer must warn *all* ultimate consumers of the vaccine regardless of the setting in which they receive the vaccine simply because the vaccine is sometimes used in a mass immunization setting. *See, e.g., Williams v. Lederle Laboratories*, 591 F.Supp. 381 (S.D.Ohio 1984). The learned intermediary doctrine is the rule, and the mass immunization case is the ex-

ception. We believe that the rule should stand whenever a physician has made a professional judgment, and that the mass immunization exception should apply only when no informed medical decision came between the manufacturer and the ultimate user. The case law indicates that if no such judgment has intervened, the user may sue the manufacturer for failure to provide him or her with a warning, even though the manufacturer may reasonably have assumed that a professional judgment *would* have intervened as in a case where it had sold the vaccine to a private physician. "[W]here no individualized medical judgment intervenes between the manufacturer ... and the ultimate consumer, it is the responsibility of the manufacturer to see that the warnings reach the *consumer....*" *Reyes,* 498 F.2d at 1276. In sum, a manufacturer will be liable to the ultimate user of its drug or vaccine product unless it provided that user with an adequate warning, *or* an informed professional judgment actually intervened in the application of the product to that user.

### C.

The next question we must address concerns the adequacy of the warning Dr. Lanier received. Once again, if the district court were to decide that the learned intermediary doctrine does not apply, the question of the adequacy of this warning may ultimately be moot because it was not given to the proper party. In case the learned intermediary doctrine does apply, we turn now to consider the issues that will be before the district court on the adequacy of the warning.

■ The defendants propose that the question of adequacy of the warning is preempted by federal law since the warning used was FDA approved. The preemption they suggest is implied preemption; in essence, they argue that state law would impermissibly conflict with federal law if it required a warning different from that approved and required by the FDA. This is the one question in this case for which the defendants' arguments on preemption are compelling; however, they are not airtight.

In the area of approving warnings, although the FDA takes an active role in designing the warning, it remains a partially passive agency. That is, it accepts information given by manufacturers proposing the licensing of a particular vaccine, and determines a proper warning based upon the information provided. 21 C.F.R. §§ 601.2, 601.12, 601.25. A state law determination on this issue should not be interjected to overrule the decision of the FDA. Such a procedure would place vaccine manufacturers in a position where they could not comply with both obligations. The FDA extensively regulates the contents and wording of these product inserts. *See, e.g.,* 21 C.F.R. §§ 1 and 201; 50 Fed.Reg. 51.108 (1985). A manufacturer must first provide all the relevant information to the FDA, which then determines a warning it deems appropriate. The manufacturer is required to print that precise warning in its product insert. *Id.* Most important, the manufacturers cannot change the language in the product insert without FDA approval. 21 C.F.R. § 601.12. It would be patently inconsistent for a state then to hold the manufacturer liable for including that precise warning when the manufacturer would otherwise be liable for *not* including it. Thus, assuming that the FDA has processed all the relevant and available information in arriving at the prescribed warning, its decision as to the proper wording must preempt by implication that of a state. Specifically, such a case would fit one of the scenarios described in *KVUE, Inc. v. Austin Broadcasting Corp.* as indicating preemption: "the state statute actually and directly conflicts with federal law." 709 F.2d 922, 931–32 (5th Cir.1983).

■ A factual issue remains, however, as to whether the manufacturer provided the FDA all the necessary and available information on which to base the warning. Thus, the only question that can be presented to the jury consistent with the federal regulatory scheme is whether the manufacturer withheld, either at the time the FDA decided the content of the warning, or since then, information that would have changed the FDA's decision. We be-

lieve that this issue should be presented to the jury in the form of special interrogatories, questioning whether and what information the manufacturer withheld from the FDA, if any, and whether possession of this information would have materially altered the content of the FDA's warning. This special procedure is justified by the federal interest in encouraging manufacturers to produce vaccines, in that those manufacturers need some assurance that if they follow certain prescribed procedures, such as including an FDA-approved warning, they are complying with the law.

### D.

Finally, we note that the learned intermediary doctrine applies only to the inadequate warning claims; it does not address design defects. *Abbot v. American Cyanamid*, 844 F.2d 1108 (4th Cir.1988). The district court dealt with the design defect issues only under its discussion of preemption. Since we have held that preemption does not apply in this case, we must remand the design defect claims to the district court.[4]

### IV

In conclusion, we hold that federal law does not preempt state products liability law governing vaccinations. We therefore remand the Hurleys' claims to the district court for further consideration. The record is insufficient for us to determine whether the learned intermediary doctrine applies. With respect to the adequacy of the warning, the record is insufficient, since the adequacy of the warning must be determined in the light of whether Lederle withheld material information from the FDA. Otherwise, the FDA-approved warning is sufficient. Finally, the district court dealt with the remaining claims only under its preemption analysis. Since we have

concluded that state product-liability law is not preempted, we remand for further proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.

---

4. Although it would seem likely, we leave it to the district court to consider whether a parallel analysis to that applied in the warning context should apply to design-defect claims. That is, although FDA regulation has not preempted the entire field of design defect, assuming that the FDA processed all necessary and available data, does FDA approval preempt a claim that the product in design is unreasonably dangerous? We do not decide this question since we do not have the benefit of a district court's reasoning on it. We wish to make clear, however, that our holding against general preemption does not necessarily exclude the possibility of such a specific preemption.