Jay BLACKMON, et al., Plaintiffs,

v.

AMERICAN HOME PRODUCTS CORPORATION, et al., Defendants.

No. CIV.A. G–02–179.

United States District Court, S.D. Texas, Galveston Division.

July 9, 2004.

Peter Andersen Moir, Quilling Selander et al., C. Andrew Waters, Walter & Kraus, Tanja Karin Martini, Hermes Sargent et al., Dallas, TX, for Plaintiffs.

Michael R. Klatt, Clark Thomas and Winters, Susan E. Burnett, Clark Thomas & Winters, Austin, TX, Daniel J. Thomasch, Orrick Herrington et al., Lauren S. Elliot, Orrick Herrington et al., New York City, Rebecca Jo Reser, Davidson & Trolilo, San Antonio, TX, Jeanne E. Walker, Faegre & Benson LLP, Russell O. Stewart, Faegre & Benson LLP, Denver, CO, John R. Gilbert, Gilbert & Moore PLLC, John Ralph Gilbert, Gilbert & Moore PLLC, Angleton, TX, Sandra Lynn Phillips, Baker Hostetler LLP, Houston, TX, Douglas W. Poole, McLeod Alexander et al., Galveston, TX, Andrew See, Shook Hardy LLP, Kansas City, MO, Diana L. Panian, Gardere Wynne et al., Houston, TX, Deborah A. Moeller, Shook Hardy et al., Kansas City, MO, Erik V. Larson, Preis Kraft and Roy, Houston, TX, Jeffery A. Kruse, Shook Hardy et al., Kansas City, MO, Marc A. Sheiness, Sheiness Scott et al., Barclay A. Manley, Fulbright & Jaworski, Richard L. Josephson, Baker & Botts, Houston, TX, David Michael Macdonald, McCauley Macdonald & Devin, Dallas, TX, John Wesley Raley, III, Cooper & Scully, Houston, TX, John A. Scully, Cooper & Scully, Dallas, TX, for Defendants.

Kim Parker, Splendora, TX, Pro se.

Alan R. Strauss, Houston, TX, Pro se.

Tracy D. Strauss, Houston, TX, Pro se.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT, GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS, AND GRANTING DEFENDANTS' MOTION TO STRIKE

KENT, District Judge.

This is a products liability action brought by minor Plaintiff Colby Brennan Scott, by and through his parents Tim and Sharon Scott (collectively "Plaintiffs"), against certain manufacturers of childhood vaccines. Plaintiffs allege that various vaccines administered to Colby Scott from February 1998 to March 1999 contained thimerosal, a mercury-based preservative, which caused him to suffer neurological injuries. Now before the Court comes the Motion for Summary Judgment filed by Defendant Wyeth as well as the Motion for Partial Summary Judgment as to Design Defect and Warnings Claims and Motion to Dismiss, or Alternatively to Strike Allegations Pursuant to Rules 9(b), 12(b)(6), and 12(f) as to Marketing Defect, Fraud and Conspiracy, and Punitive Damages Claims, filed by Defendant SmithKline Beecham Corporation d/b/a GlaxoSmithKline ("SB"). Defendants Aventis Pasteur, Inc. ("Aventis") and Merck & Co., Inc. ("Merck") join in both Motions. For the reasons stated below, the Motions are **GRANTED IN PART** and **DENIED IN PART**.

I. Background and Facts

While he was an infant, Colby Scott was allegedly exposed to harmful levels of mercury through routine childhood vaccinations administered by his pediatrician. All

or some of the vaccines contained thimerosal, a mercury-laden preservative. At that time, vaccine manufacturers routinely added thimerosal to multiple-use vials of vaccines to extend each vial's shelf life. The thimerosal (and with it, mercury) introduced into Colby Scott's body by way of vaccination allegedly caused serious and lasting neurological injuries.

Plaintiffs filed this action in a Texas state court seeking damages for Colby Scott's personal injuries. In their Original Petition, Plaintiffs asserted multiple counts against two groups of Defendants: (1) the manufacturers of thimerosal-containing vaccines, including Wyeth, SB, Aventis, and Merck; and (2) the manufacturers of Thimerosal itself. Defendants removed the case pursuant to the Court's diversity jurisdiction.

On March 3, 2003, the Court Granted the Vaccine Defendants' Motion to Abate Proceedings and Ordered that the case be administratively stayed pending the resolution of Plaintiffs' claims before the Vaccine Court as required by the National Childhood Vaccine Injury Act, 42 U.S.C. § 300aa–1 *et seq.* ("the Vaccine Act"). Pursuant to the Court's Order Conditionally Granting Plaintiffs' Motion to Dissolve Stay and Granting Leave to File Amended Complaint, the administrative stay was dissolved on December 31, 2003. Plaintiffs filed their Amended Complaint on January 5, 2004, asserting claims of strict liability, negligence, gross negligence, fraud, and conspiracy. On March 5, 2004, Wyeth filed its Motion for Summary Judgment, and SB filed its Motion for Partial Summary Judgment and Motion to Dismiss, or Alternatively to Strike. Plaintiffs timely responded to both Motions.

## II. Design Defect and Failure to Warn

### A. Legal Standard

Wyeth, SB, Aventis, and Merck move for summary judgment on Plaintiffs' de-

sign defect and failure-to-warn claims. Summary judgment is appropriate if no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). When one party moves for summary judgment, the non-moving party must set forth specific facts showing that there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Issues of material fact are "genuine" only if they require resolution by a trier of fact. *See id.* at 248, 106 S.Ct. at 2510. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *See id.* at 247–48, 106 S.Ct. at 2510. If the evidence is such that a reasonable fact-finder could find in favor of the nonmoving party, summary judgment should not be granted. *See id.; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. *See Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513.

### B. The Vaccine Act Bars Plaintiffs' Design Defect Claims.

Plaintiffs' claims are covered by the Vaccine Act, which Congress passed to preserve the supply of vaccines and thereby prevent "deadly, disabling, but preventable infectious diseases." H.R.Rep. No. 99–908, at 4 (1986), *reprinted in* 1986 U.S.C.C.A.N. 6344, 6345. Congress found the vaccination of children to be "one of

the most spectacularly effective public health initiatives this country has ever undertaken," which "prevented thousands of children's deaths each year and has substantially reduced the effects resulting from disease." *Id.*

Congress also recognized that while most children derived a great benefit from childhood vaccination, "a small but significant number have been gravely injured." *Id.* These inevitable vaccine-related injuries raise two concerns: (1) the inconsistency, expense, delay, and unpredictability of the tort system in compensating claims of vaccine-injured children; and (2) the instability and uncertainty of the childhood vaccine market inevitably caused by the risks of tort litigation. *See id.* at 7, 186 U.S.C.C.A.N. at 6348. Congress passed the Vaccine Act in response to an upsurge of vaccine-related litigation that threatened to drive manufacturers away from vaccine production or to cause remaining manufacturers to increase their prices significantly. *See Schafer v. Am. Cyanamid Co.,* 20 F.3d 1, 4 (1st Cir.1994) (discussing congressional testimony by vaccine manufacturers regarding insurance and litigation costs). The Vaccine Act reflects a congressional determination that the disappearance or unavailability of childhood vaccines would cause far greater harm than the inevitable but limited injuries caused by the vaccines themselves. To offset the vicissitudes of the tort system and provide compensation for victims of childhood vaccines, the Vaccine Act established the National Vaccine Program, which provides a unique avenue of recovery for injuries and deaths traceable to vaccinations that works with greater ease and on a faster timetable than the civil tort system. *See Shalala v. Whitecotton,* 514 U.S. 268, 269, 115 S.Ct. 1477, 1478, 131 L.Ed.2d 374 (1995). In effect, it "ensure[s] that all children who are injured by vaccines have access to sufficient compensation for their injuries," H.R.Rep. No. 99–

908 at 4, 1986 U.S.C.C.A.N. at 6345–46. The Vaccine Act also includes certain limitations on tort claims designed to "free manufacturers from the specter of large, uncertain tort liability, and thereby keep vaccine prices fairly low and keep manufacturers in the market." *Schafer v. Am. Cyanamid Co.,* 20 F.3d 1, 4 (1st Cir.1994).

The Vaccine Act provides that, with certain exceptions, "State law shall apply to a civil action brought for damages for a vaccine-related injury or death." 42 U.S.C. § 300aa–22(a). Defendants argue that Plaintiffs' design defect claims are barred by § 22(b) of the Vaccine Act, which provides

> No vaccine manufacturer shall be liable in a civil action for damages arising from a vaccine-related injury or death associated with the administration of a vaccine after October 1, 1988, if the injury or death resulted from side effects that were unavoidable even though the vaccine was properly prepared and was accompanied by proper directions and warnings.

42 U.S.C. § 300aa–22(b)(1). Defendants construe this section of the Vaccine Act to impose a total bar on design defect claims arising from vaccine-related injuries. Plaintiffs disagree with Defendants' construction of the Vaccine Act, which in their view only bars design defect claims if the side effects are determined, on a case-by-case basis, to be "unavoidable." Not surprisingly, Plaintiffs argue that their defective design claims are not barred because the injuries suffered by Colby Scott were not unavoidable. Plaintiffs maintain that the injuries could have been avoided if Defendants had used a mercury-free preservative for multi-dose vials of their vaccines, or if they had simply distributed single-dose vials, which do not require a preservative.

■ Read against the background of products liability law, the language of § 22(b) shows Congress's intent to foreclose all design defect claims against vaccine manufacturers. Texas law recognizes three types of product liability claims: (1) defective design, (2) defective manufacture, and (3) inadequate warning or failure to warn. *See, e.g., Hanus v. Tex. Utils. Co.,* 71 S.W.3d 874, 878 (Tex.App.—Fort Worth 2002, no pet.); *Coleman v. Cintas Sales Corp.,* 40 S.W.3d 544, 548 (Tex.App.—San Antonio 2001, pet. denied). The drafters of § 22(b) were obviously aware of the different heads of products liability, yet the statute identifies only two: manufacturing defect and failure-to-warn claims. The statute singles out these two claims as the variables that determine whether a claimant may sue the manufacturer for a vaccine-related injury. If the alleged defect that caused the claimants injury does not fall into one of these two enumerated categories, the defect is considered "unavoidable," and the claimant's tort claim is barred.

The origins of § 22(b) reinforce Defendants' construction of the statute. Congress modeled § 22(b) after comment k in § 402A of the Restatement (Second) of Torts. Using the Pasteur rabies vaccine as an example of "products, which, in the present state of human knowledge, are quite incapable of being made safe for their intended and ordinary use," the Restatement takes the following view of liability:

Such a product, properly prepared, and accompanied by proper directions and warning, is not defective, nor is it unreasonably dangerous. The same is true of many other drugs, vaccines, and the like, many of which for this reason cannot legally be sold except to physicians ....

Restatement (Second) of Torts § 402A cmt. k (1966). Like § 22(b), comment k distinguishes the three heads of products liability—design defect, manufacturing defect, and warning defect—and rejects the notion of defective design in the context of products with certain known and inherent risks that have nonetheless been accepted as a matter of policy given the benefit provided and the grim consequences that would follow if the product were not available. Under comment k, as long as such a product is "properly prepared, and accompanied by proper directions and warning"—that is, as long as it is free from manufacturing and warning defects—the seller will not be held strictly liable for injuries resulting from risks inherent in the product's design.

The legislative history also supports a construction of § 22(b) that would bar all defective design claims under the conditions outlined in the statute. Two passages in the Report of the Committee on Energy and Commerce suggest that Congress intended the National Vaccine Program's compensation system to absorb defective design claims. The report states that the Committee looked to comment k "because it intends that the principle in Comment K regarding 'unavoidably unsafe products ... apply to the vaccines covered in the bill and that such products not be the subject of liability in the tort system.' " Report of the Committee on Energy and Commerce, H.R.Rep. No. 99–908 at 26, *reprinted in* 1986 U.S.C.C.A.N. at 6367. The report also contains the following statement:

Given the existence of the compensation system in [the Vaccine Act], the Committee strongly believes that Comment k is appropriate and necessary as the policy for civil actions seeking damages in tort. Vaccine-injured persons will now have an appealing alternative to the tort system. Accordingly, if they cannot demonstrate under applicable law either that a vaccine was improperly prepared or that it was accompanied by improper

directions or inadequate warnings [they] should pursue recompense in the compensation system, not the tort system. *Id.* The last passage indicates rather clearly the Committee's intent to relegate design defect claims to the compensation system, provided that the injury-producing vaccine was manufactured and distributed according to applicable federal standards.

Plaintiffs contend that the question whether a side effect was unavoidable must be determined on a case-by-case basis. This construction of the statute, which would permit the jury to decide whether a particular side effect was unavoidable, would provide no protection against design defect claims. A plaintiff could show that an alleged defect was not unavoidable by proving that an alternative design was feasible. Not only is this construction inconsistent with the policy behind the Vaccine Act; it strips the passage of all meaning. If an alleged defect were truly unavoidable in the broad, literal sense urged by Plaintiffs, a manufacturer could not be subject to liability as a result of that defect. With this meaning, the statute would protect manufacturers from liability only on meritless claims. The Court must presume that Congress intended statutory language to have some effect. *See, e.g., Shalala v. Whitecotton,* 514 U.S. 268, 278, 115 S.Ct. 1477, 1482, 131 L.Ed.2d 374 (1995) (O'Connor, J., concurring) (citing the "elementary canon of construction that a statute should be interpreted so as not to render one part inoperative") (quoting *Dep't of Revenue of Oregon v. ACF Industries, Inc.,* 510 U.S. 332, 340, 114 S.Ct. 843, 848, 127 L.Ed.2d 165 (1994)).

Perhaps more importantly, to permit juries in each state to pass judgment on the design of childhood vaccines could interfere with the federal government's efforts to establish a uniform national standard for childhood vaccines. Congress has established a comprehensive regulatory scheme, administered by the FDA, to control the design and distribution of prescription drugs, including vaccines. *See* 21 U.S.C. §§ 301–393; *see also Grundberg v. Upjohn Co.,* 813 P.2d 89, 99 (Utah 1991) (discussing in detail the pre-approval screening and post-market surveillance undertaken by the FDA). Any manufacturer seeking a license to distribute a new vaccine must submit to the FDA a formal Product License Application including information related to the safety, efficacy, labeling, and manufacturing of the specific vaccine. *See* 42 U.S.C. § 262(a). The FDA licenses each vaccine in accordance with a specific formula and approves specific labeling information. *See* 21 C.F.R. §§ 601.2, 601.12. After the vaccine is licensed, the manufacturer cannot change the formula or the label without FDA approval. *See id.* The Vaccine Act delegates questions of vaccine safety to the Secretary of Health and Human Services. *See* 42 U.S.C. § 300aa–27 (directing the Secretary to promote the design of safer childhood vaccines). Individual challenges to the design of FDA-approved vaccines would undermine the FDA's authority to set standards for childhood vaccines. Case-by-case consideration would also expose manufacturers to inconsistent standards, as juries might hold manufacturers liable for design defects in drugs approved by the FDA. The consequences of case-by-case determination of "unavoidability" lend further support to the conclusion that § 22(b) directs the evaluation of vaccine design exclusively to the FDA.

Plaintiffs maintain that even if their strict liability claims are barred by the Vaccine Act, their design defect claims based on negligence survive. Plaintiffs point out that negligence and strict liability are functionally distinct and rely upon different standards of proof under Texas law. Plaintiffs also maintain that the principles of unavoidably unsafe products out-

lined in Restatement § 402A comment k do not apply to negligence claims. Plaintiffs argue that because the Vaccine Defendants have not raised any arguments proving that they were not negligent as a matter of law, Plaintiffs' negligence claims cannot be dismissed.

This argument ignores the text of the Vaccine Act's limitation on manufacturer liability, which is not directed to ward any particular cause of action. Section 22(b)(1) states broadly that no manufacturer "shall be liable in a civil action for damages arising from a vaccine-related injury or death." 42 U.S.C. § 300aa–22(b)(1). The phrase "a civil action for damages" encompasses products liability claims based on negligence as well as those based on strict liability. While comment k is restricted to strict liability claims, § 22(b) is not. Plaintiffs' negligent design defect claims are therefore barred by the Act, and Defendants' Motions for Summary Judgment are GRANTED.

*C. The Vaccine Act Bars Plaintiffs' Claims Based on Defendants' Failure to Provide Direct Warnings to Plaintiffs or the Public at Large.*

■ Defendants argue that Plaintiffs' failure-to-warn claims are barred by the Vaccine Act. The Vaccine Act places the following limit on warning claims:

> No vaccine manufacturer shall be liable in a civil action for damages arising from a vaccine-related injury or death associated with the administration of a vaccine after October 1, 1988, solely due to the manufacturer's failure to provide direct warnings to the injured party (or the injured party's legal representative) of the potential dangers resulting from the administration of the vaccine manufactured by the manufacturer.

42 U.S.C. § 300aa–22(c). Because the Vaccine Act clearly bars claims based on a manufacturer's failure to provide warnings to the public or to consumers, Defendants

are entitled to summary judgment insofar as Plaintiffs' claims are based on Defendants' failure to provide direct warnings to the public or to Plaintiffs themselves. To this limited extent, Defendants' respective Motions for Summary Judgment are hereby **GRANTED**.

*D. Defendants Are Not Entitled to the Vaccine Act's Presumption of Proper Warnings to Doctors and Medical Intermediaries*

■ Plaintiffs also allege that Defendants failed to warn doctors and other medical intermediaries of the hazards posed by thimerosal. This claim is obviously not subject to the prohibition against claims based on failure to warn the injured party. Defendants argue that this claim is nonetheless barred because it is no more than a restated defective design claim. Defendants also rely on the following presumption:

> [A] vaccine shall be presumed to be accompanied by proper directions and warnings if the vaccine manufacturer shows that it complied in all material respects with all requirements under the Federal Food, Drug, and Cosmetic Act and section 262 of this title ... applicable to the vaccine and related to vaccine-related injury or death for which the civil action was brought ....

42 U.S.C. 300aa–22(b)(2). Defendants are not entitled to the presumption until they produce evidence of compliance with the FDA regulations. *See Hurley v. Lederle Laboratories Div.*, 863 F.2d 1173, 1179–80 (5th Cir.1988). The Court cannot accept the fact that the FDA licensed the vaccines as *prima facie* evidence that Defendants complied with all regulations and are therefore entitled to the statutory presumption of proper warnings. As the Circuit noted in *Hurley*, "In the area of approving warnings, although the FDA takes an active role in designing the warning, it

remains a partially passive agency. That is, it accepts information given by manufacturers proposing the licensing of a particular vaccine, and determines a proper warning based upon the information provided." *Id.* at 1179 (citing 21 C.F.R. §§ 601.2, 601.12, 601.25).

The Vaccine Act imposes a burden of production on the manufacturer to show material compliance with FDA regulations. Once this showing is made, the burden shifts to the plaintiff to show (1) that the manufacturer engaged in "fraud or intentional and wrongful withholding of information from the Secretary during any phase of a proceeding for approval of the vaccine under section 262," (2) that the manufacturer engaged in "intentional and wrongful withholding of information relating to the safety or efficacy of the vaccine after its approval," or (3) "by clear and convincing evidence that the manufacturer failed to exercise due care." *See* 42 U.S.C. § 300aa–22(b)(2). This claim turns on precise facts, including the information available to the manufacturers at the time that the vaccines were produced and the specific warnings provided to physicians and other medical intermediaries. Because Defendants have not met their burden of production, they are not entitled to the statutory presumption. Accordingly, Defendants' Motion for Summary Judgment and Motion to Dismiss are hereby respectfully **DENIED** insofar as they seek dismissal of Plaintiffs' claims based on the alleged failure to provide proper warnings to medical professionals. Defendants remain free, however, to move for appropriate relief on this issue after discovery.

## III. Fraud

Wyeth, Aventis, and Merck move for summary judgment on Plaintiffs' fraud claim. SB, Aventis, and Merck move to dismiss or, alternatively, to strike the claim. Plaintiffs base their claim of fraud on the allegation that Defendants con-

spired to, and did in fact, knowingly or recklessly make false, material representations by withholding or concealing information from the FDA, consumers, and the general public concerning the hazards of thimerosal. Defendants argue that Plaintiffs' fraud claim is barred for failure to plead with particularity as required by Rule 9(b).

■ Rule 9(b) provides, "In all averments of fraud or mistake, the circumstances constituting such fraud or mistake shall be stated with particularity." Fed. R.Civ.P. 9(b). The Fifth Circuit has interpreted Rule 9(b) to require that plaintiffs allege "the particulars of the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby." *Williams v. WMX Techs.*, 112 F.3d 175, 179 (5th Cir. 1997) (quoting *United States ex rel. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 384 (5th Cir.2003)). Count four of Plaintiffs' Amended Complaint alleges that "[a]ll Defendants ... knowingly or recklessly made false, material representations by withholding and/or concealing information from the FDA, consumers, and the general public regarding the toxic hazards and potential public health ramifications associated with the use of their mercury-containing products." Amended Complaint para. 85.

■ The Amended Complaint does not provide the time, place, or contents of such false, material representations, nor does it connect any particular statement to a particular speaker. Failure to comply with the heightened pleading requirements of Rule 9(b) should not automatically or inflexibly result in dismissal with prejudice. *See Hart v. Bayer Corp.*, 199 F.3d 239, 247 n. 6 (5th Cir.2000); *see also Cates v. Int'l Telephone & Telegraph Corp.*, 756 F.2d 1161, 1180 (5th Cir.1985) ("[S]uch deficiencies do not normally justify dismissal

of the suit on the merits and without leave to amend, at least not in the absence of special circumstances."). However, the facts and circumstances of this case provide no suggestion that Plaintiffs will be able to allege, let alone prove, any set of facts to support a claim of fraud. The Court is sympathetic to Plaintiffs' need to explore all of their options, particularly in this unique context, but this is not a viable claim. Accordingly, Wyeth's Motion for Summary Judgment and SB's Motion to Dismiss are hereby **GRANTED**.

### IV. Gross Negligence and Punitive Damages

 Plaintiffs allege that Defendants' conscious indifference to the health, safety, and welfare of the individuals affected by their vaccines constitutes gross negligence, entitling them to punitive damages under Texas law. Defendants argue that the Vaccine Act bars punitive damages absent a showing of "fraud or intentional and wrongful withholding of information" during the regulatory process or "other criminal or illegal activity relating to the safety and effectiveness of vaccines." 42 U.S.C. § 300aa–23(d)(2). Because the Act does not authorize punitive damages for gross negligence, and because Plaintiffs' fraud claim has been dismissed, the Complaint provides no basis for punitive damages.[1] Accordingly, Defendants' Motion to Strike is hereby **GRANTED**.

### V. Conclusion

For the reasons stated above, Defendants Wyeth, Aventis, and Merck's Motion for Summary Judgment is hereby **GRANTED IN PART** and **DENIED IN PART**; Defendants SB, Aventis, and Merck's Motion for Partial Summary Judgment is hereby **GRANTED**; SB, Aventis, and Merck's Motion to Dismiss is hereby **GRANTED IN PART** and **DENIED IN PART**; and Defendants' Motion to Strike Plaintiffs' prayer for punitive damages is hereby **GRANTED**. Plaintiffs' design defect claims are hereby **DISMISSED WITH PREJUDICE**, Plaintiffs' failure-to-warn claims are hereby **DISMISSED WITH PREJUDICE** only insofar as they are based on Defendants' alleged failure to warn Plaintiffs or the public at large, Plaintiffs' fraud claims are hereby **DISMISSED WITH PREJUDICE**, and Plaintiffs' prayer for punitive damages is hereby **STRICKEN**. Each Party is to bear its own taxable costs, attorneys' fees, and expenses incurred herein to date.

**IT IS SO ORDERED**

---

1. Plaintiffs argue that regardless of their entitlement to punitive damages, they may still pursue the gross negligence claim. Plaintiffs submit that their gross negligence allegations raise the inference that the Vaccine Defendants failed to exercise due care, which, if proven by clear and convincing evidence, would enable Plaintiff's to overcome the statutory presumption that Defendants provided proper warnings to medical professionals. *See id.* § 300aa–22(b)(2). Because Defendants do not move to dismiss the substantive gross negligence claim, the Court does not reach this issue.